UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ONCOLOGY & RADIATION
ASSOCIATES, P.A.,

                              Plaintiff,

v.

BRISTOL-MYERS SQUIBB CO.,

                              Defendant.

Civil Action No. 1:01CV02313 (EGS)

PLAINTIFF ONCOLOGY & RADIATION ASSOCIATES, P.A.'S
MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT BETWEEN PLAINTIFF AND BRISTOL-MYERS SQUIBB CO.
AND FOR CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS

# TABLE OF CONTENTS

*Page No.*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Plaintiff's Investigation and Subsequent Litigation Underlie this
        Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  The Proposed Settlement Benefits the Settlement Class. . . . . . . . . . . . . . . . . . 3

    C.  The Court Should Grant Preliminary Approval. . . . . . . . . . . . . . . . . . . . . . . . . 4

II. THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE
    OF POSSIBLE FINAL APPROVAL AND THUS MERITS
    PRELIMINARY APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  The Court Must Preliminarily Approve a Proposed Settlement That
        Falls within the Range of Possible Final Approval. . . . . . . . . . . . . . . . . . . . . . . 5

    B.  The Settlement Is the Product of Extensive, Arm's Length
        Negotiations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.  The Proposed Settlement Terms Are Fair, Reasonable and
        Adequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.  Settlement Payment Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. PROPOSED TIMETABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. NOTICE TO THE SETTLEMENT CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.  THE PROPOSED SETTLEMENT CLASS SATISFIES ALL OF THE
    REQUIREMENTS OF RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.  Antitrust Claims Are Particularly Appropriate for Class Action
        Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

B.     The Proposed Bristol Settlement Class Satisfies The Requirements of Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      1.     The Bristol Settlement Class Is So Numerous that Joinder of all Members Is Impracticable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      2.     There Are Questions of Law and Fact Common to All Members of the Settlement Class. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      3.     The Representative Plaintiff's Claims Are Typical of Bristol Settlement Class Members' Claims. . . . . . . . . . . . . . . . . . . . 18

      4.     The Representative Plaintiff Will Fairly and Adequately Represent the Bristol Settlement Class. . . . . . . . . . . . . . . . 21

C.     This Action Meets the Requirements Of Rule 23(b)(3). . . . . . . . . . . . . . . . . . . . 20

      1.     Common Questions Of Law and Fact Predominate. . . . . . . . . . . . . . . . 21

      2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I. **INTRODUCTION**

Plaintiff Oncology & Radiation Associates, P.A. ("Plaintiff" or "ORA"),

individually and as representative of the proposed class in this litigation (the "Action"),

respectfully submits this memorandum in support of its motion for an order preliminarily

approving its settlement of the class action with defendant Bristol-Myers Squibb Company

("Bristol") in this Action, for conditional certification of a settlement class (the "Direct Purchaser

Settlement Class"), for approval of the form and manner of notice of the settlement, and for a

stay of proceedings against Bristol.

Pursuant to the Settlement Agreement ("Settlement")[1], Bristol will make a cash payment

of $65 million dollars ($65,000,000) to be made available to the members of the Direct Purchaser

Settlement Class.  The Direct Purchaser Settlement Class includes all persons or entities in the

United States who purchased Taxol directly from Bristol or its subsidiaries at any time from

January 1, 1999 through March 14, 2003 (excluding all defendants, their subsidiaries and

affiliates, and government entities). In exchange, the Direct Purchaser Settlement Class will

dismiss all claims against Bristol.

Plaintiff brought this Action pursuant to the federal antitrust laws on behalf of itself and

all non-governmental entities in the United States who purchased Taxol directly from Bristol

from January 1, 1999 to March 14, 2003, seeking treble damages and other relief as permitted by

the federal antitrust laws.  Plaintiff alleges in its Complaint that Bristol (i) fraudulently obtained

U.S. patent No. 5,641,803 (the "'803 patent") and U.S. patent No. 5,670,537 (the "'537 patent"),

(ii) wrongfully listed the '803 patent and '537 patent in the Food and Drug Administration's

---

[1]A copy of the Settlement Agreement is attached as Exhibit 1 to the Plaintiff's Motion.

("FDA") Orange Book and (iii) commenced sham patent infringement litigation with respect to the '537 patent and '803 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and members of the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct.

Plaintiff also alleges that Bristol conspired with ABI to wrongfully list U.S. patent No. 6,090,331 (the "'331 patent") in the Orange Book and to thereafter commence sham patent infringement litigation with respect to the '331 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and members of the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct.

Bristol has denied, and continues to deny, that it committed any violation of law or any wrongdoing, and further denies it has any liability with respect to any claims asserted in the complaint and denies any and all liability to Plaintiff and the Class.

### A.    Plaintiff's Investigation and Subsequent Litigation Underlie this Settlement.

Since the filing of this Action, the Parties have engaged in extensive analysis of the pertinent facts. Plaintiff's counsel have conducted an extensive investigation relating to the claims and underlying events alleged in the Complaint, including (i) the analysis of documents produced in discovery and (ii) extensive legal research. Plaintiff's counsel have also retained and consulted with economists and other experts with respect to damages sustained by the Class as a result of the wrongful conduct alleged in the Complaint. As a result, Plaintiff's counsel are

thoroughly familiar with issues of liability and damages with respect to the claims asserted in the Complaint.

### B.     The Proposed Settlement Benefits the Settlement Class.

The proposed settlement provides substantial benefits to the Direct Purchaser Settlement Class. As explained in detail below, pursuant to the Settlement Agreement, Bristol has agreed to deposit $65 million dollars into the Direct Purchaser Settlement Fund Account by March 21, 2003. Settlement Agreement (Ex. 1), p. 8.[2]

In exchange for the consideration provided by the Agreement, members of the Direct Purchaser Settlement Class will release all claims against Bristol related to the conduct alleged in this class action.

Plaintiff's counsel and Bristol's counsel, who are experienced and knowledgeable antitrust and class action attorneys, negotiated the Settlement Agreement after extensive, arduous, arm's length negotiations undertaken in good faith, and after substantial factual investigation and legal analysis of the claims and defenses of the parties. Over the course of the parties' extensive arm's-length negotiations, Plaintiff's counsel have concluded that the proposed Settlement with Bristol embodied in this Settlement Agreement is within the range of possible approval and, indeed, is fair, adequate and reasonable, and in the best interests of the Class. Among the factors considered are: (1) the sharply contested legal and factual issues involved in this Action as they relate to Bristol; (2) the risks attendant upon further prosecution of this Action; and (3) the substantial benefits to be received by the proposed Class pursuant to this Settlement Agreement.

---

[2]References to "Ex. 1" in this memorandum are to the Settlement Agreement between Plaintiff and Bristol.

**C.     The Court Should Grant Preliminary Approval.**

As discussed below, this Settlement is appropriate and clearly falls within the range of possible approval.  Plaintiff therefore requests that the Court either on the papers or at the earliest date available to the Court:

(a)     Establish a date for a fairness hearing on final approval of the proposed settlement;

(b)     Approve both forms of Notice of Class Action Settlement with Bristol-Myers Squibb Co. and Hearing Thereon (the Notice and the Summary Notice) attached as Exhibits A and B to the Preliminary Approval Order.

(c)     Direct that the Notice and Summary Notice be disseminated to all known and reasonably identifiable members of the Direct Purchaser Settlement Class;

(d)     Establish a deadline for Direct Purchaser Settlement Class members to submit requests for exclusion from the Bristol Settlement Class, and to file objections to the proposed settlement; and

(e)     Conditionally certify the Bristol Settlement Class for the purpose of effectuating the Settlement.[3]

---

[3]Attached as Exhibit A is a proposed Order Conditionally Certifying Settlement Class and Preliminarily Approving Proposed Settlement.

## II.     THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE OF POSSIBLE FINAL APPROVAL AND THUS MERITS PRELIMINARY APPROVAL.

### A.     The Court Must Preliminarily Approve a Proposed Settlement That Falls within the Range of Possible Final Approval.

Rule 23(e) provides that:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Fed. R. Civ. P. 23(e).  It is well-settled that the purpose of preliminary approval of a class action settlement is to determine whether the settlement falls within the range of possible approval, so that notifying the class of the proposed settlement is justified.  Notice of the settlement is disseminated to the Class, following which the court determines whether final approval of the Settlement is appropriate.[4]

The Manual for Complex Litigation describes the established framework for the Court's preliminary evaluation of a proposed settlement:

> Approval of class action settlements involves a two-step process. First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall

---

[4]*See* Fed. R. Civ. P. 23(e).  *See also, e.g., Berry v. School Dist. of the City of Benton Harbor*, 184 F.R.D. 93, 96 (W.D. Mich. 1998); *In re Prudential Sec. Inc. Ltd. Partnership Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

> within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.[5]

A court should therefore preliminarily approve a settlement if the Court makes two related determinations. First, preliminary approval is appropriate if no basis exists to question the fairness of the settlement, because it "is not the product of collusion between the parties."[6]

Second, a court should grant preliminary approval when the proposed settlement appears to fall within the range of possible approval, i.e., whether the settlement appears to be one that can be found, after a full and fair hearing, to be fair, adequate, and reasonable.[7] There is "'no obligatory test' . . . to determine whether a settlement is fair, adequate and reasonable."[8] Fact-bound and case-specific, this adequacy inquiry is properly confined to the court's discretion.[9] However, "[t]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."[10]

---

[5]MANUAL FOR COMPLEX LITIGATION THIRD (1995) ("MANUAL") at § 30.41. *See also* 2 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1992).

[6]*Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997). *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (settlement should be the "result of good faith arm's length bargaining undertaken by experienced counsel"); *Thomas v. Christopher*, 169 F.R.D. 224, 240 (D.D.C. 1996) (court must determine that proposed settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties"), *aff'd in part, rev'd in part*, 139 F.3d 227, 231 (D.C. Cir. 1998); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983) (requirement that settlement be fair is designed to protect against collusion among parties).

[7]*See Thomas v. Albright*, 139 F.3d at 231.

[8]*Pigford v. Glickman*, 185 F.R.D. 82, 98 n.13 (D.D.C. 1999), (citing *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 303-04 (D.D.C. 1996).

[9]*See Pigford v. Glickman*, 185 F.R.D. 82, 98 (D.D.C. 1999).

[10]*Cotton v. Hinton*, 559 F.2d 1325, 1330 (5th Cir. 1977).

Once a proposed settlement has been preliminarily approved, notice is given to the settlement class of the settlement and the formal fairness hearing. Because preliminary approval is a provisional step that merely begins the settlement approval process, any doubts are resolved in favor of preliminary approval.[11]

## B.     The Settlement Is the Product of Extensive, Arm's Length Negotiations.

In approving class settlements, courts repeatedly and expressly defer to the judgment of experienced counsel who have conducted arm's length negotiations.[12]   The presumption in favor of such settlements reflects the courts' understanding that vigorous negotiation between seasoned and experienced counsel protects against collusion and advances the fairness concerns underlying Rule 23(e).

The settlement proposed here -- which was negotiated over a several-month period on behalf of the Direct Purchaser Settlement Class by experienced antitrust counsel -- is the product of extensive arm's length negotiations undertaken in good faith, after substantial factual investigation and legal analysis. Nothing in the course of the negotiations or the substance of the settlement "disclose[s] grounds to doubt its fairness."[13]  To the contrary, the arm's length nature of the negotiations and the participation of experienced advocates throughout the process

---

[11]*See In re Traffic Executive Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.")

[12]*See, e.g., In re Lease Oil Antitrust Litig.,* (No. II), 186 F.R.D. 403, 424-25 (S.D. Tex. 1999) (quoting *Cotton v. Hinton*, 559 F.2d 1325, 1330 (5th Cir. 1977)); *Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); *McGuiness v. Parnes*, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989).

[13]MANUAL § 30.41.

strongly supports the conclusion that the proposed settlement is fair, reasonable, and adequate, and falls within the range of possible final approval.

### C. The Proposed Settlement Terms Are Fair, Reasonable and Adequate.

#### 1. Settlement Payment Terms.

Under the terms of the Settlement Agreement, Bristol has agreed to pay $65 million to settle the claims of the Direct Purchaser Settlement Class. Ex. 1, p. 8. The benefits of the Settlement justify preliminary and, indeed, final approval. The settlement amount – $65 million dollars– is significant considering the sharply contested factual and legal issues involved in this Action as they relate to Bristol.

This Settlement is a significant benefit for the Class. It provides a meaningful guarantee of recovery to class members regardless of how the litigation against the remaining non-settling defendant is resolved.[14] Antitrust conspiracy cases are complex and difficult, and victory is never guaranteed.[15] As one court noted in the context of complex litigation, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."[16]

---

[14]*See In re Fine Paper Antitrust Litig.*, 1980-1 Trade Cas. (CCH) ¶ 63,120, at 77,589, 1979 WL 1743, at *2 (E.D. Pa. 1979), *vacated and remanded on other grounds,* 632 F.2d 1081 (3d Cir. 1980) ("[p]laintiffs are guaranteed an early recovery of at least part of their claims and at the same time eliminate the risk of a totally adverse judgment.").

[15]*See, e.g., In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (noting "recognized difficulties of proof and requirements of a costly trial on the merits" and approving settlement); *In re Cement & Concrete Antitrust Litig.*, 1981 WL 2039, at *3, 1981 U.S. Dist. LEXIS 11272, at *8 (D. Ariz. 1981) (recognizing "complexity and uncertainty" of legal and factual issues in antitrust case and approving settlement); *In re Fine Paper Antitrust Litig.*, 1980-1 Trade Cas. (CCH) ¶ 63,120, at 77,589, 1979 WL 1743, at *2 (E.D. Pa. 1979).

[16]*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (citing instances in which settlements were rejected by the court and plaintiffs ultimately lost at trial or recovered less than settlement amount).

Plaintiff anticipates that this case will continue to entail vigorous disputes over issues of law and fact. Had the case proceeded to trial, Bristol would have contested liability, as well as causation and impact, and likely would have challenged Plaintiff's measures of damages. Viewed against any probable recovery, and considering the risks of protracted litigation, this settlement falls well within the range of possible final approval as fair, reasonable, and adequate, and therefore merits preliminary approval. Given the complexities of proof in antitrust class actions regarding, among other things, conspiracy, impact and damages, Plaintiff recognizes that a defendant can raise many factual and legal issues, the resolution of which might be against their interests.

## III.    PROPOSED TIMETABLE

Plaintiff proposes the following schedule:

1.      No later than 20 days from the date the Court enters the Order Conditionally Certifying Settlement Class and Preliminarily Approving Proposed Settlement, thereby assigning the date for the final approval hearing, the Notices shall be sent by first-class mail to all members of the Direct Purchaser Class who are ascertainable with reasonable diligence.

2.      No later than 10 days after the mailing of the notice, publication of the Summary Notice shall begin in Modern Healthcare Magazine and The Pink Sheet to occur at least 30 days prior to the Settlement Hearing;

3.      By letter postmarked within 45 days after the Notice is mailed, any member of the Direct Purchaser Settlement Class who wishes to be excluded therefrom, and from participating in the settlement, must file a Request to be Excluded;

4.      Prior to the Settlement Hearing Date, Plaintiff must file their motion for final approval ___ days after the Notice is mailed;

5.    By mailing postmarked within 45 days after the Notice is mailed, any objections to the settlement must be filed;

6.    As soon as possible on or after ____ days from the date that the Court enters its Preliminary Approval Order, a hearing shall take place before the Court on final approval of the settlement.[17]

## IV.    NOTICE TO THE SETTLEMENT CLASS

Rule 23(e) provides that in a class action, "notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs."[18] The purpose of the notice is to "afford all members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment."[19]

---

[17]A proposed Order for Final Approval And Judgment is attached as Exhibit B.

[18]Fed. R. Civ. P. 23(e).  In addition, Federal Rule of Civil Procedure 23(c)(2) provides:

> (2)  In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

[19]*Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974).  *See Gottlieb v. Wiles*, 11 F.3d 1004, 1012-13 (10th Cir. 1993) (notice must fairly apprize class members of the settlement and their options).

The proposed notice program clearly meets these standards.  The forms of notice that Plaintiff proposes satisfy the requirements of due process by alerting and informing all known and reasonably identifiable Direct Purchaser Settlement Class members of the Settlement, its terms, and the class members' opportunity to appear and be heard at the Court's formal fairness hearing.

Plaintiff proposes that Lead Counsel shall provide those members of the Direct Purchaser Settlement Class who have been identified by reasonable means with notice by first-class mail of the conditional certification of the Bristol Settlement Class, and of the date of the Court's formal hearing on the fairness, adequacy and reasonableness of the proposed settlement.[20]  Plaintiff also shall take all necessary and appropriate steps to ensure that notice of the Settlement Hearing is provided in accordance with the Order of the Court.  Notice shall be given by publication one day a week for two consecutive weeks in the Modern Healthcare Magazine and The Pink Sheet .[21]

The content of the notice and the proposed method of dissemination plainly fulfill the requirements of Federal Rule of Civil Procedure 23(e), 23(c)(2), and due process, and thus should be approved.

---

[20]Plaintiff proposes that this mailing use the "long form" Notice, attached as Exhibit A to the Preliminary Approval Order.

[21]Plaintiff proposes that this publication use the Summary Notice, attached as Exhibit B to the Preliminary Approval Order.

## V.   THE PROPOSED SETTLEMENT CLASS SATISFIES ALL OF THE REQUIREMENTS OF RULE 23.

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class.[22]  All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  Thus, a settlement class should be certified where the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – are satisfied as well as one of the three subsections of Rule 23(b).[23] The proposed Direct Purchaser Settlement Class meets these requirements.

### A.   Antitrust Claims Are Particularly Appropriate for Class Action Treatment.

Class actions are widely recognized as being particularly appropriate for the litigation of antitrust cases because anticompetitive conduct "presumably impact[s] all consumers in the affected market, so that common questions on the issue of liability predominate."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 2001 U.S. Dist. LEXIS 11991, at *37 (citing *In re Plastic Cutlery Antitrust Litig.*, Civ. No. 96-CV-728, 1998 WL 135703, at *2 (E.D. Pa. Mar. 20, 1998)).

Additionally, the claims of direct purchasers may involve a small amount of damages, creating a disincentive to bring an individual suit.  As the Supreme Court noted in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997):

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the

---

[22]*See Amchem Products v. Windsor*, 521 U.S. 591, 593 (1997);  *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998).

[23]*See Thomas v. Christopher*, 169 F.R.D.224, 236 (D.D.C. 1996).

> relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.

(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Minn. v. U.S.

Steel Corp.*, 44 F.R.D. 559, 572 (D. Minn. 1968) ("Few are the individual claimants with a

sufficient interest at stake or resources to bring a suit requiring proof of a conspiracy among

business corporations."). Without the class action device, most of the victims of defendants'

widespread anticompetitive conduct in this case, who could not afford independent

representation, would be deprived of a fair adjudication of their claims. "Although a given

institution could conceivably have a claim substantial enough to warrant a separate action, the

relatively small claims in many cases might render litigation impracticable." *In re Ampicillin

Antitrust Litig.*, 55 F.R.D. 269, 278 (D.D.C. 1972); s*ee also In re NASDAQ Market-Makers

Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Not surprisingly, therefore, federal courts

have routinely certified classes in antitrust cases involving monopolies[24] and horizontal

agreements between competitors.[25]

---

[24]See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 2001 U.S. Dist. LEXIS 11991 (D.D.C. June 29, 2001) (Chief Judge Hogan certified class of direct purchasers of generic anti-anxiety drugs); In re Cardizem CD Antitrust Litig., 2001 U.S. Dist. LEXIS 8911 (E.D. Mich. April 3, 2001); In re Visa Check/Mastermoney Antitrust Litig., 192 F.R.D. 68 (E.D.N.Y. 2000); Panache Broadcasting of Pa., Inc. v. Richardson Electronics, Ltd., Case No. 90 C 6400, 1999 U.S. Dist. LEXIS 7941 (N.D. Ill. 1999); Forsyth v. Humana, Inc., 827 F. Supp. 1498 (D. Nev. 1993); Thompson v. Midwest Found. Indep. Physicians Ass'n, 117 F.R.D. 108 (S.D. Ohio 1987); Weiss v. York Hosp., 548 F. Supp. 1048 (M.D. Pa. 1982); In re Ampicillin Antitrust Litig., 55 F.R.D. 269, 273 (D.D.C. 1972); Bellinder v. Microsoft Corp., Consolidated Case No. 99 CV 17089, Chapter 60, slip op. (Kan. D. Ct., Johnson Cty. September 7, 2001) (attached hereto as Exh. 2); Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases, No. J.C.C.P. No. 4106, Order re Class Certification, slip op. (Cal.Sup.Ct. Aug. 29, 2000) (attached hereto as Exh. 3); Friedman v. Microsoft, No. 2000-000722, slip op. (Az.Sup.Ct., Maricopa Cty. Nov. 14, 2000) (attached hereto as Exh. 4); Gordon v. Microsoft Corp., Case No. 00-5994, 2001 WL 266432 (Minn.Dist.Ct. 2001); Barnard v. Microsoft Corp., No. 99-17602 NZ, slip op. (Mich. Cir. Ct. May 4, 2000) (attached hereto as Exh. 5); A&M Supply Co. v. Microsoft Corp., No. 00-031123-NZ, slip op. (Mich. Cir. Ct. August 21, 2001) (attached hereto as Exh. 6).

[25]See, e.g., In re Terazosin Hydrochloride Antitrust Litig., Case No. 99-MDL-1317, slip op. (S.D. Fla. Sep. 20, 2001) (attached hereto as Exh. 1); In re Monosodium Glutamate Antitrust Litig., Civ. No. 00-MDL-1328 (PAM) (D. Minn. June 8, 2001) (attached hereto as Exh. 7); In re Magnetic Audiotape Antitrust Litig., Case No. 99-1580, 2001 WL 619305 (S.D.NY. June 1, 2001); In re Cardizem CD Antitrust Litig., 200 F.R.D. 297 (E.D. Mich. 2001); In re Flat Glass Antitrust Litig., 191 F.R.D. 472 (W.D. Pa. 1999); Sebo v.Rubenstein, 188 F.R.D. 310 (N.D. Ill. 1999); Panache Broadcasting of Pa., Inc. v. Richardson Electronics, Ltd., Case No. 90 C 6400, 1999 U.S. Dist. LEXIS 7941 (N.D. Ill. 1999); In re Commercial Tissue Products Antitrust Litig., 183 F.R.D. 589 (N.D. Fla. 1998); In re Plastic Cutlery Antitrust Litig., 1998 WL 135703 (E.D. Pa. 1998); In re Playmobil Antitrust Litig., 35 F. Supp. 2d 231 (E.D.N.Y. 1998); In re Medical X-Ray Film Antitrust Litig., Case No. CV-93-5904, 1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. 1997); In re Polypropylene Carpet Antitrust Litig., 996 F. Supp. 18 (N.D. Ga. 1997); In re Amino Acid Lysine Antitrust Litig., No. 95 C 7679, MDL NO. 1083, slip op. (N.D. Ill. February 15, 1996) (attached hereto as Exh. 8); In re Citric Acid Antitrust Litig., File No. C-95-2963, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. 1996); In re High Fructose Corn Syrup Antitrust Litig., 936 F. Supp. 530 (C.D. Ill. 1996); In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493 (S.D.N.Y. 1996); In re Potash Antitrust Litig., 159 F.R.D. 682 (D. Minn. 1995); In re Brand Name Prescription Drugs Antitrust Litig., Case No. 94 C 897, 1994 WL 663590 (N.D. Ill. 1994); In re Carbon Dioxide Antitrust Litig., 149 F.R.D. 229 (M.D. Fla. 1993); In re Catfish Antitrust Litig., 826 F. Supp. 1019 (N.D. Miss. 1993); In re Infant Formula Antitrust Litig., No. MDL 878, 1992 WL 503465 (N.D. Fla. 1992); In re Domestic Air Transp. Antitrust Litig., 137 F.R.D. 677 (N.D. Ga. 1991).

**B.     The Proposed Bristol Settlement Class Easily Satisfies the Requirements of Rule 23(a).**

**1.     The Bristol Settlement Class Is So Numerous That Joinder of All Members Is Impracticable.**

Under Rule 23(a)(1) the class must be so numerous that joinder of all members is

"impracticable." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999).  A

complaint need not allege the exact size of the proposed class nor the identity of the class

members.  *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992); *In re*

*VMS Sec. Litig.*, 136 F.R.D. at 473; *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522, 524 (N.D. Ill.

1988).  Instead, a finding of numerosity may be supported by common sense assumptions.

*Scholes*, 143 F.R.D. at 184; *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989); *In re*

*Chlorine and Caustic Soda Litig.*, 116 F.R.D. at 625.  "Impracticable" does not mean impossible;

showing a strong hardship or inconvenience may be sufficient.  *In re Flat Glass Antitrust Litig.*,

191 F.R.D. at 477 (citing *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979)).

In reviewing the practicability of joinder under Rule 23(a)(1), the size of the proposed

class is a key factor. "In the District of Columbia, numbers of class members from 20 to 400 have

sustained the numerosity requirement." *Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C. 1987).[26]

Numerosity cannot be seriously contested in this case.  Bristol's sales of Taxol are in the

hundreds of millions of dollars per year, and the proposed Class likely numbers in the thousands.

Classes numbering in the hundreds "have routinely satisfied the numerosity requirement." *In re*

---

[26] 3B J. Moore, Moore's Federal Practice ¶ 23.05[1] (2d. ed. 1987) (modern trend is that twenty-one or fewer plaintiffs will be insufficient, between twenty-one and forty plaintiffs will receive a mixed response, and with over forty plaintiffs the courts always find that the requirement of numerosity has been met).

*Flat Glass Antitrust Litig.*, 191 F.R.D. at 477 (citing *Eisenberg*, 766 F.2d at 785-86; *Hedges Enters., Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 465 (E.D. Pa. 1979)).

Moreover, members of the Class sought are geographically dispersed throughout the United States. *See Pigford v. Glickman*, Civ. Action No. 97-1978, 1998 U.S. Dist. LEXIS 16299, at *21-22 (D.D.C. 1998). "Joinder of this number of geographically dispersed entities would be impracticable because some members would be unable to assume the financial burdens associated with litigating individual antitrust lawsuits, and because some members have relatively small claims, rendering it unlikely and unfeasible, in an economic sense, for them to bring individual claims." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 477. Accordingly, the numerosity requirement is satisfied.

### 2. There Are Questions of Law and Fact Common to Each Member of the Settlement Class.

Rule 23(a)(2) requires only that there be some questions of law or fact common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Accordingly, the commonality requirement has been aptly characterized as a "low hurdle easily surmounted." *Scholes*, 143 F.R.D. at 185 (quotations and citations omitted); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Antitrust cases, by their nature, deal with common legal and factual issues. *See, e.g. Ballard v. Blue Shield of S.W. Va., Inc.* 543 F.2d 1075, 1080 (4th Cir. 1976) ("Class actions are frequently maintained in antitrust cases because of the many questions of law and fact that are common to the members of the class."); *Jennings Oil Co. v. Mobil Oil Corp.*, 80 F.R.D. 124, 128 (S.D.N.Y.) ("The monopolization claims are contingent upon a showing of monopoly power and

an examination of the manner in which such power was acquired or maintained.  These issues,

along with others, are questions that are undoubtedly common to all members of the putative

class.") (citations omitted).  Also, "[t]he weight of authority in antitrust cases indicates that the

question of the existence of a conspiracy in restraint of trade is one that is common to all

potential plaintiffs, and the importance of this question usually warrants treating them as a class."

*Sebo v. Rubenstein,* 188 F.R.D. 310, 314 (N.D. Ill. 1999) (citation omitted).

In this case, there are several issues of law and fact common to each Class member,

including, among others:

a.    whether Bristol unlawfully monopolized the U.S. market for paclitaxel;

b.    whether Bristol's '803 and '537 patents are invalid;

c.    whether Bristol's litigation asserting infringement of the '803, '537 and '804
      patents was baseless;

d.    whether Bristol improperly listed the '331 patent in the Orange Book;

e.    whether Bristol conspired with ABI to forestall entry of generic paclitaxel
      products;

f.    whether Bristol's unlawful conduct caused plaintiff and the other members of the
      class to pay more for paclitaxel drugs; and

g.    the appropriate measure of the Class's damages.

Complaint ¶ 13.  The commonality requirement is satisfied in this case.

### 3.    The Representative Plaintiff's Claims Are Typical of Direct Purchaser Settlement Class Members' Claims.

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the

claims . . . of the class."  Typicality focuses on "whether the individual claim of the class

representatives has the essential characteristics common to the claims of the class." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 479. A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) *(*quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)), *cert. denied*, 506 U.S. 1051 (1993); *In re VMS Sec. Litig.*, 136 F.R.D. at 475. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." 1 H. Newberg & A. Conte, Newberg On Class Actions § 3.13, at 3-76 (3d ed. 1992) ("Newberg"); *see also NASDAQ*, 169 F.R.D. at 511 (factual differences among class members do not defeat class certification where all claims arise from the same price-fixing conspiracy); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 699 (N.D. Ga. 1991) (typicality requirement satisfied even though the 12.5 million class members purchased tickets for an enormous number of different routes, at diverse times, at a multitude of varying prices, and on diverse terms). Courts have construed the typicality requirement liberally. *See Scholes*, 143 F.R.D. at 185; *Mersay v. First Republic Corp. of Am.*, 43 F.R.D. 465, 468 (S.D.N.Y. 1968).

In this case, ORA's claims are unquestionably typical of the claims of the Class it seeks to represent. Plaintiff claims that it was injured in its business or property by defendants' antitrust violations. Plaintiff's claims are typical because its claims and the absent Class members' claims all arise from the same course of conduct (Bristol's monopolization of the paclitaxel market and defendants' conspiracy to restrain trade) and all are based on the same legal theory (that such conduct violates Sections 1 and 2 of the Sherman Act). Thus, the typicality requirement is satisfied.

#### 4.     The Representative Plaintiff Will Fairly and Adequately Represent the Direct Purchaser Settlement Class.

The final requirement of Rule 23(a) is that the representative parties fairly and adequately represent the class.  Fed. R. Civ. P. 23(a)(4).

> Two criteria for determining the adequacy of representation are generally recognized:  (1) the named representative must not have antagonistic or conflicting interests with unnamed members of the class, and (2) the representatives must appear to be able to vigorously prosecute the interests of the class through qualified counsel.

*Nat'l Ass'n of Reg'l. Med. Program v. Mathews,* 551 F.2d 340, 345 (D.C. Cir. 1976) (citations omitted), *cert. denied*, 431 U.S. 954 (1977); *see Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (holding that where it is unlikely that segments of the class would have interests conflicting with the class representative, and where the interests of the class have been competently urged at each level of the proceeding, the test of Rule 23(a)(4) has been met).

Here, the interests of the Class representative are aligned with the interests of the other Class members because they have all been injured by the same anticompetitive conduct.  Plaintiff does not have any interests antagonistic to those of the other Class members.  The central issues for the monopoly claims -- the existence, maintenance and effect of Bristol's monopoly power -- are common to the claims of ORA and the other members of the proposed Class.  The central issues for the conspiracy claims -- the existence, duration and effect of Bristol's conspiracy with ABI -- are also common to the claims of ORA and the other members of the proposed Class. The named plaintiff has the same interest as each of the other Class members in proving each of these monopolization and conspiracy elements.  In proving these elements, Plaintiff will necessarily prove them for the claims of the other Class members.

ORA is represented by some of the most qualified and experienced lawyers in the United States in the successful prosecution of antitrust class actions, so "there is no ground for supposing that plaintiffs will not adequately represent the class." *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. at 306. The firms representing ORA stand ready, willing and able to advance the resources necessary to litigate this case vigorously and to see it through to the best possible conclusion.[27]

### C.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are met, the Class must also satisfy at least one provision of Rule 23(b). *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir.), *cert. denied*, 525 U.S. 1033 (1998). Pursuant to Rule 23(b)(3), class certification is appropriate where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Thomas*, 139 F.3d at 234; *In re VMS Sec. Litig.*, 136 F.R.D. at 479. As the Supreme Court has recently observed, "predominance [of common issues] is a test readily met in certain cases . . . involving violations of antitrust laws."[28] Here, the proposed Direct Purchaser Settlement Class clearly satisfies Rule 23(b)(3).

---

[27]So as not to burden the Court with numerous attachments, ORA has not attached any firm resumes as exhibits to this Memorandum. If the qualifications of Plaintiff's counsel becomes an issue, appropriate evidence of their experience with antitrust class actions and other complex litigation will be provided.

[28]*Amchem Products. v. Windsor*, 521 U.S. 591, 625 (1997).

1.     **Common Questions of Law and Fact Predominate.**

Rule 23 requires only that common issues predominate, not that they be dispositive of the

entire litigation. *See, e.g., Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992)

("common issues need not be exclusive, but must only predominate over individual concerns").

The Supreme Court has recognized that "predominance is a test readily met in certain

cases alleging consumer or securities fraud or *violations of the antitrust laws*." *Amchem Prods.,*

*Inc.*, 521 U.S. at 625 (emphasis added). *See Sollenbarger v. Mountain States Tel. & Tel. Co.*,

121 F.R.D. 417, 427 (D.N.M. 1988) ("[t]he common questions of law, the elements of the

monopolization claim . . . dwarf, rather than merely predominate over, any individual

questions"); *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 149 (E.D. Pa. 1976) ("[I]n Section 1

Sherman Act cases, the existence *vel non* of a conspiracy has been recognized as an overriding

issue common to the plaintiff class."). "The predominance requirement is satisfied unless it is

clear that individual issues will overwhelm the common questions and render the class action

valueless." *NASDAQ*, 169 F.R.D. at 517 (citations omitted).

Courts addressing monopolization and conspiracy claims have readily concluded that the

existence and scope of the anticompetitive conduct and its impact on purchasers predominate

over any individual issues. This Court, in another pharmaceutical antitrust class action, observed

that "[a]ntitrust actions involving common question of liability for monopolization and price-

fixing have frequently been held to predominate for the preliminary stage of class certification."

*In re Lorazepam & Clorazepate Antitrust Litig.*, 2001 U.S. Dist. LEXIS 11991, at *63. In that

case, the plaintiffs alleged that defendants unlawfully monopolized, conspired to monopolize,

and fixed prices in the market for generic anti-anxiety drugs. *Id.* at *9. Chief Judge Hogan

certified a class of purchasers, finding that the following common questions were presented: (1)

the definition of the relevant markets; (2) whether defendants had monopoly power in those

markets; (3) whether that market power was willfully maintained by exclusionary means; (4)

whether defendants conspired to monopolize and fix prices; (5) the success and impact of the

defendants' monopolization, conspiracy to monopolize, and conspiracy to fix prices; and (6) the

legality of the defendants' actions. *Id.* at *63; *see also Stephenson v. Bell Atlantic Corp.*, 177

F.R.D. 279, 286-87 (D. N.J. 1997) (certifying monopoly claims under both federal and state

antitrust law and finding that common questions were presented); *Davis v. S. Bell Tel. & Tel.*

*Co.*, Case No. 89-2839-CIV, 1993 U.S. Dist. LEXIS 20033, at *20-26 (S.D. Fla. 1993) (granting

class certification in monopolization case and noting that "[t]he complexity of these [individual]

issues pales in comparison with the complexity of the issues related to proof of antitrust

violation").[29]

In this case, there are multiple issues of antitrust violation, impact and damages that can

be proved with class-wide evidence. Thus, the questions of law or fact common to the members

of the Direct Purchaser Settlement Class predominate over questions affecting only individual

settlement class members' complaints, and the settlement class should be certified.

---

[29]*See also In re Ampicillin Antitrust Litig.*, 55 F.R.D. at 273 (finding commonality where "[e]ach of the class actions allege[d] that the defendants' violations of Sections 1 and 2 of the Sherman Act [h]ad caused the price of ampicillin and other semisynthetic penicillins to be maintained at high, arbitrary and noncompetitive levels throughout the United States, all to the injury of plaintiffs and the particular class members"); 4 Newberg § 18.26, at 18-83 to 18-86 ("[i]n antitrust suits, the issue of conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement").

## 2.   A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy.

A class action is a superior device for adjudicating the effect of defendants' wrongdoing on direct purchasers of Taxol in this country.  Neither the parties nor the judicial system would benefit from duplicative litigation in this matter.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *5 (N.D. Ill. 1994); *In re Amino Acid Lysine Antitrust Litig.*, No. 95 C 7679, MDL NO. 1083, slip op. at 17 (N.D. Ill. February 15, 1996) (attached hereto as Exh. 8).  Prosecution of this action as a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (quoting 1966 Advisory Committee Notes to Rule 23, 39 F.R.D. 69, 102-03 (1966)); *accord United Nat'l Records, Inc. v. MCA, Inc.*, 101 F.R.D. 323 (N.D. Ill. 1984).  "What would be unmanageable is the institution of numerous individual lawsuits." *Scholes*, 143 F.R.D. at 189.  Moreover, "[t]he cost associated with individual claims may require claimants with potentially small amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical.  This in turn would result in unjustly enriching the Defendants; precisely the result antitrust laws are designed to remedy." *Potash*, 159 F.R.D. at 699.

The words of Judges Will and Robson in *In re Folding Carton Antitrust Litig.* are instructive:

> We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits.  Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit.  While such litigation presents some problems to counsel and the court, these burdens are not nearly as

23

> onerous to the judicial system as a series of extended suits against the defendants.
>
> The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions reenforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement.

75 F.R.D. at 733 (citations and quotations omitted).

Thus, the alternatives to a class action here are either: (1) no recourse for possibly thousands of individual Class members throughout the United States who have been damaged by defendants' anticompetitive conduct, or (2) a multiplicity of scattered suits, resulting in the inefficient, and possibly inconsistent administration of justice.  Certification of the Class in this action is plainly the superior, and in all likelihood the only, method by which most, if not all, Class members can seek to remedy their injuries.

This settlement satisfies all the requirements of Federal Rule of Civil Procedure 23. Numerosity, commonality, typicality, and adequacy are all present in this case, with common questions predominating, and class treatment is the optimum way to handle this matter. Therefore, this Court should certify the proposed settlement class.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for preliminary approval of this Settlement, and:  (1) conditionally certify this case as a class action on behalf of the proposed Bristol Settlement Class; (2) establish a date for a hearing on approval of the proposed settlement; (3) approve the forms of Notice and Summary Notice contained in Exhibits A and B to the Preliminary Approval Order; (4) direct that the Notice and Summary Notice be disseminated in the manners described herein and (5) establish a deadline, inter alia, for potential class members to request exclusion from the Settlement Class or to file any objections to the proposed settlement.

Dated: March 25, 2003                    Respectfully submitted,


                                                   /s/
                          Michael D. Hausfeld (D.C. Bar No. 153742)
                          Daniel A. Small (D.C. Bar No. 465094)
                          Brian A. Ratner (D.C. Bar No. 473284)
                          **COHEN, MILSTEIN, HAUSFELD**
                            **& TOLL, P.L.L.C.**
                          1100 New York Avenue, N.W.
                          West Tower, Suite 500
                          Washington, D.C.  20005-3934
                          Telephone: (202) 408-4600
                          Facsimile: (202) 408-4699

                          Linda P. Nussbaum
                          Jacqueline E. Bryks
                          **COHEN, MILSTEIN, HAUSFELD**
                            **& TOLL, P.L.L.C.**
                          825 Third Avenue, 30th Floor
                          New York, NY  10022
                          Telephone: (212) 838-7797
                          Facsimile: (212) 838-7745

Jay B. Shapiro
Matthew W. Buttrick
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**
Museum Tower – Suite 2200
150 West Flagler Street
Miami, FL  33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

Alan D. Lash
Martin B. Goldberg
**LASH & GOLDBERG LLP**
100 S.E. 2nd Street, Suite 1200
Miami, FL  33131
Telephone: (305) 347-4040
Facsimile:  (305) 347-4050

**Attorneys for Plaintiff**
**Oncology & Radiation Associates, P.A.**