**EXHIBIT 1**

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

| | |
|---|---|
| ONCOLOGY & RADIATION ASSOCIATES, P.A., <br><br> <div align="center">**Plaintiff,**</div> <br> v. <br><br> **BRISTOL-MYERS SQUIBB COMPANY and AMERICAN BIOSCIENCE, INC.,** <br><br> <div align="center">**Defendants.**</div> | Civil Action No. 1:01CV02313 (EGS) |

<div align="center">

**STIPULATION OF SETTLEMENT**

</div>

This stipulation of settlement ("Settlement Agreement") is made and entered into as of this 14th day of March, 2003, between the named plaintiff in the above-captioned action (the "Action"), Oncology & Radiation Associates, P.A. ("Plaintiff"), individually and as representative of the proposed direct purchaser class in this Action, as defined in Section I.C below (the "Class"), and Bristol-Myers Squibb Company ("Bristol").

**WHEREAS:**

A.    Plaintiff commenced this Action on November 6, 2001, against Bristol and filed an amended complaint against Bristol and American BioScience Inc. ("ABI") on October 4, 2002 (the "Complaint");

B.    Plaintiff brought this Action pursuant to the federal antitrust laws on behalf of itself and all non-governmental entities in the United States who purchased Taxol directly from Bristol since January 1, 1999, seeking treble damages and other relief as permitted by the federal antitrust laws;

C.    Plaintiff alleges in the Complaint that Bristol (i) fraudulently obtained U.S. patent No. 5,641,803 (the "'803 patent") and U.S. patent No. 5,670,537 (the "'537 patent"), (ii) wrongfully listed the '803 patent and '537 patent in the Food and Drug Administration's

("FDA") Orange Book and (iii) commenced sham patent infringement litigation with respect to the '537 patent and '803 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct;

D.      Plaintiff also alleges in the Complaint that Bristol conspired with ABI to wrongfully list U.S. patent No. 6,090,331 (the "'331 patent") in the Orange Book and to commence sham patent infringement litigation with respect to the '331 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct;

E.      Since the filing of this Action, the Parties have engaged in extensive analysis of the pertinent facts. Plaintiff's counsel have conducted an extensive investigation relating to the claims and underlying events alleged in the Complaint, including (i) the analysis of documents produced in discovery and (ii) extensive legal research. Plaintiff's counsel have also retained and consulted with economists and other experts with respect to damages allegedly sustained by the Class as a result of the wrongful conduct alleged in the Complaint. As a result, Plaintiff's counsel are thoroughly familiar with issues of liability and damages with respect to the claims asserted in the Complaint;

F.      Bristol has denied, and continues to deny, that it committed any violation of law or any wrongdoing, and further denies it has any liability with respect to any claims asserted in the Complaint and denies any and all liability to Plaintiff and the Class;

G.      Over the course of the Parties' extensive arm's-length negotiations, Plaintiff's counsel have concluded that the proposed settlement with Bristol embodied in this Settlement Agreement is fair, adequate and reasonable, and in the best interests of the Class. Among the factors considered in this Action are: (1) the sharply contested legal and factual issues involved in this Action as they relate to Bristol; (2) the risks attendant upon further prosecution of this

2

Action; and (3) the substantial benefits to be received by the proposed Class pursuant to this Settlement Agreement;

      H.     Bristol, likewise recognizing the costs and uncertainties attendant upon further litigation of the claims in this Action, and while continuing to deny vigorously Plaintiff's allegations and any liability with respect to any and all claims asserted in the Complaint, has concluded that it is desirable that all of the claims in this Action that have, or could have, been asserted against Bristol be compromised and settled. The resolution of the claims asserted in the Complaint will terminate the costly process of litigation and put to rest forever the controversy surrounding matters at issue in this Action as they relate to Bristol; and

      I.     It is the intention of the Parties that the proposed Settlement resolve all claims of the Class against Bristol that were, or could have been, asserted in this Action, or that relate to the subject matter of this Action.

      **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Parties, through their undersigned counsel, subject to Court approval pursuant to Fed. R. Civ. P. 23(e), and to all of the terms and conditions set forth herein, as follows:

**I.**    **DEFINITIONS**

      The following definitions shall apply throughout this Settlement Agreement:

      A.     "Bristol" means Bristol-Myers Squibb Company, a Delaware corporation with its principal place of business in New York, New York, and its divisions, subsidiaries, and affiliates.

      B.     "Bristol's Counsel" means Cravath, Swaine & Moore, Worldwide Plaza, 825 Eight Avenue, New York, New York 10019.

      C.     "Class" means the class to be certified for settlement purposes only pursuant to this Settlement Agreement, which shall include all non-governmental Persons that purchased Taxol directly from Bristol since January 1, 1999, through the date of this Settlement Agreement.

      D.     "Class Counsel" means the following law firms and attorneys:

        COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
        Linda P. Nussbaum

Jacqueline E. Bryks
825 Third Avenue, 30th Floor
New York, NY  10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

STEARNS WEAVER MILLER WEISSLER
    ALHADEFF & SITTERSON
Jay B. Shapiro
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida  33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

LASH & GOLDBERG LLP
Alan D. Lash
100 S.E. 2nd Street, Suite 1200
Miami, FL  33131
Telephone:  (305) 347-4040
Facsimile:  (305) 347-4050

E.      "Complaint" means the original complaint in this Action and the amended

complaint filed on or about October 4, 2002.

F.      "Court" means the United States District Court for the District of Columbia.

G.      "Direct Purchaser Settlement Fund Account" means an interest-bearing escrow

account established by Lead Counsel and administered by the Settlement Administrator in

accordance with both the Escrow Agreement and this Settlement Agreement to hold funds to be

distributed to the Settling Class Members in this Action.

H.      "Effective Date" means the date on which each and every one of the following

conditions has been satisfied, unless one or more of such conditions is waived in writing by

Bristol's Counsel or modified in a writing signed by Lead Counsel and Bristol's Counsel:

1.      Execution of this Settlement Agreement by Lead Counsel and Bristol's

Counsel;

4

2.    Bristol has not availed itself of any right to terminate or withdraw from the Settlement Agreement.

3.    Entry by the Court of a Preliminary Approval Order substantially in the form attached hereto as Exhibit A;

4.    Expiration of the period within which Non-Settling Class Members must exercise their rights to be excluded from the Class;

5.    Final approval by the Court of the Settlement, following entry of the Preliminary Approval Order and Notice to the proposed members of the Class and the Fairness Hearing as prescribed by Fed. R. Civ. P. 23;

6.    Entry by the Court of the Final Order and Judgment substantially in the form attached hereto as Exhibit B; and

7.    The Final Order and Judgment shall have become "Final," which shall be deemed to occur upon the expiration of the tenth day after the applicable time for appeals of the Final Order and Judgment (whether as of right or upon showing of excusable neglect or good cause) has expired without any appeal having been taken, or, if an appeal is taken, upon the expiration of the tenth day after such appeal has been dismissed prior to resolution by the Court or upon expiration of the tenth day after the Final Order and Judgment is finally affirmed by the appellate court with no possibility of subsequent appeal or other judicial review thereof. For purposes of this subsection, and "appeal" shall include, without limitation, any petition for a writ of certiorari that may be filed in connection with the approval or disapproval of this Settlement Agreement.

I.    "Escrow Agreement" means the agreement substantially in the form of Exhibit C hereto. The Escrow Agent, as defined in the Escrow Agreement shall be SunTrust Bank, Inc. or another financial institution that the Parties mutually agree upon.

J.    "Fairness Hearing" means the hearing scheduled by the Court pursuant to this Settlement Agreement to consider final approval of the Settlement and the entry of the Final Order and Judgment.

5

K.     "Final Order and Judgment" means the Court's final, appealable order, which is substantially in the form attached hereto as Exhibit B and as more fully defined in Section IX.B below.

L.     "Non-Settling Class Members" means each and every member of the Class who exercises its right to exclude itself from the Class pursuant to a proper written request for exclusion.

M.     "Lead Counsel" means the following law firm and attorneys:

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
Linda P. Nussbaum
Jacqueline E. Bryks
825 Third Avenue, 30th Floor
New York, NY 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

N.     "Notice" means the notice or notices of the proposed class action settlement and the Fairness Hearing that are to be (i) mailed to members of the Class, and (ii) published in a manner directed and approved by the Court pursuant to Section IX.A below.

O.     "Parties" means the Plaintiffs, for themselves and on behalf of the Class, and Bristol.

P.     "Person" means an individual, corporation, limited or general partnership, association, trust, joint venture, or any other non-governmental entity or organization, and its heirs, executors, successors, and assigns.

Q.     "Preliminary Approval Order" means the Court's order, substantially in the form attached hereto as Exhibit A, preliminarily approving the Settlement Agreement, as set forth in Section IX.A below.

R.     "Released Claims" is defined in paragraph X.A.

6

S.      "Releasees" means Bristol and its present and past, direct and indirect, parents, subsidiaries, divisions, partners and affiliates or other organizational units of any kind, any entity now or in the past controlled by, controlling or under common control with any of the foregoing, the past and present officers, directors, partners, shareholders, employees, agents, attorneys, representatives, beneficial owners, investment advisors, investment bankers, independent contractors, accountants, heirs, executors, trustees, administrators of each of the foregoing, and the predecessors, successors, and assigns of each of the foregoing.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

T.      "Settlement Administrator" means the Person that Lead Counsel and Bristol's Counsel shall mutually agree upon and shall seek to have approved by the Court to administer and/or monitor the Notice, mailing, publication, the Direct Purchaser Settlement Fund Account and such other administrative functions as may be specified.

U.      "Settlement Agreement" means this Stipulation of Settlement.

V.      "Settling Class Members" means Plaintiff and each and every member of the Class that does not exercise its right to exclude itself from the Class, pursuant to a proper written request for exclusion postmarked on or before the date to be set by the Court as required in the Notice, on its own behalf and on behalf of, and including, its respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, its respective present and former officers, directors, employees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Settling Class Member.

W.      "Taxol" means the branded paclitaxel drug manufactured and sold by Bristol.

## II.   CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES

A.   Sole Purpose.  Solely for the purposes of settlement, the Action shall be certified, upon approval of the Court, as a class action on behalf of the Class, pursuant to Fed. R. Civ. P. 23(b)(3).

B.   Class Definition. The Class shall consist of all persons and entities in the United States who purchased Taxol directly from Bristol or its subsidiaries at any time from January 1, 1999, through the date of the Settlement Agreement.  Excluded from the class are Bristol, its parents, subsidiaries and affiliates, and government entities.

C.   Class Representative.  Plaintiff, Oncology & Radiation Associates, P.A., shall act as representative of the Class; and

D.   Lead Counsel.  Cohen, Milstein, Hausfeld & Toll, P.L.L.C. shall act as Lead Counsel.

## III.   CONSIDERATION TO THE SETTLING CLASS MEMBERS

A.   Consideration.  In full settlement and compromise of all Released Claims in this Action, and subject to the terms and conditions of this Settlement Agreement, Bristol has agreed to pay a total of 65 million dollars ($65,000,000) in settlement of this Action.

B.   Deposit Date.  In accordance with the foregoing, Bristol shall deposit 65 million dollars ($65,000,000) into the Direct Purchaser Settlement Fund Account by March 21, 2003.

## IV.   DISTRIBUTION OF THE DIRECT PURCHASER SETTLEMENT FUND ACCOUNT

A.   Distribution.  As soon as practicable after the Effective Date, the money in the Direct Purchaser Settlement Fund Account shall be distributed to the Settling Class Members as ordered by the Court.  Prior to the Effective Date, disbursements for the costs and expenses of Class notice, administration of the Direct Purchaser Settlement Fund Account, attorneys' fees and reasonable expenses awarded by the Court, and any incentive to the Plaintiff awarded by the Court, may be made from the Direct Purchaser Settlement Fund Account.

## V.    APPLICATION FOR ATTORNEYS' FEES

A.    <u>Attorneys' Fees for Lead and Class Counsels</u>. Class Counsel intend to seek, solely from the Direct Purchaser Settlement Fund Account, attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of this action in an amount up to 33 1/3% of the Settlement Fund (plus interest thereon). Bristol agrees to take no position with respect to the application by Class Counsel for the attorneys' fees and expense payments set forth above. Bristol agrees that any attorney fees and expenses awarded by the Court shall be disbursed only to Lead Counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., for allocation among the various Counsel which have participated in this litigation. Bristol agrees, subject to any order of the Court, that Lead Counsel will be paid approved attorneys' fees and expenses within five (5) business days after entry of the Court's order finally approving the settlement and awarding attorneys' fees and expenses. Disbursements of Class Counsel's attorneys' fees shall not be delayed by reason of any appeal of the final judgment. However, if a final judgment by the Court approving the settlement is reversed on appeal, Lead Counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., shall within five (5) business days after receiving written notice from counsel for Bristol, cause a refund to be made to the Direct Purchaser Settlement Fund Account in the amount of the disbursement paid to Lead Class Counsel, plus interest that would have accrued on that amount had it remained in the Settlement Fund. This paragraph is subject to the terms of a confidential letter agreement entered into between Lead Counsel and Bristol concerning the means of ensuring prompt repayment pursuant to the previous sentence.

B.    <u>Fees Not Condition of Settlement</u>. It is agreed that allowance or disallowance by the Court of any applications by Class Counsel for fees, costs, or expenses, including the fees of experts and consultants pursuant to paragraph IX, is not a condition to, and such allowance or disallowance, and any order or proceeding relating thereto, or any appeal from any such order, shall not operate to affect, terminate, cancel or delay, this Settlement Agreement or to affect, terminate, cancel or delay the finality of the Final Order and Judgment under paragraph VII.B. or any other provision in this Settlement Agreement. However, distribution of all or a portion of the

money from the Direct Purchaser Settlement Fund Account may be delayed in the event of an appeal concerning the Court's award of attorneys' fees and/or expenses.

## VI.    JURISDICTION OVER THE SETTLEMENT

A.    <u>Exclusive Jurisdiction of the Court</u>. The Direct Purchaser Settlement Fund Account shall remain subject to the exclusive jurisdiction of the Court until the funds shall be distributed pursuant to this Settlement Agreement and further order(s) of this Court.

B.    <u>Claims Based on Distributions</u>. Bristol and Bristol's Counsel shall have no responsibility or liability from any distributions from the Direct Purchaser Settlement Fund Account. No Settling Class Member shall have any claim against Bristol or Bristol's Counsel based on any distribution or failure to distribute from the Direct Purchaser Settlement Fund Account, including without limitation costs, fees and expenses. No Settling Class Member shall have any claim against Lead Counsel, Class Counsel, the Settlement Administrator or any agent designated by the Settlement Administrator, based on distributions made substantially in accordance with the Settlement Agreement and any orders of the Court. If the amounts received by Settling Class Members, or any part thereof, are construed to be income, it is their sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest, and to indemnify and hold harmless the Releasees from any claim or liability for such taxes, penalties or interest.

## VII.    TERMINATION AND DISAPPROVAL

A.    <u>Termination or Modification of the Settlement.</u> If, after notice of the settlement is sent to the Class, Class members with aggregate purchases exceeding a certain amount (as specified in a confidential letter agreement between the parties) exclude themselves from the Class, then Bristol may, under certain circumstances provided in the letter agreement, be entitled to terminate or modify this Settlement Agreement, provided however, that any such election must be made by Bristol in writing within 10 business days following the receipt of all exclusions from the Plaintiff. Plaintiff agrees to provide Bristol with all exclusions within three (3) business days of receipt.

B.     Disapproval. If the Court does not enter the orders or judgments in substantially the form provided herein, or if the Court enters the orders or judgments substantially in the form provided herein and appellate review is sought, and on such review such order or judgment is not affirmed or is materially modified, then this Settlement Agreement shall be terminated upon the election of Bristol or Plaintiff, by written notice to the other party within thirty (30) days from the date of the mailing of such ruling to such Parties. Such notice may be provided on behalf of the Parties by their respective Counsel.

C.     Termination. In the event that (1) this Settlement Agreement is terminated, or (2) the Effective Date does not occur for any reason: (a) this Settlement Agreement shall have no further force and effect; (b) the money in the Direct Purchaser Settlement Fund Account shall be returned to Bristol; and (c) this Action shall thereupon revert forthwith to its procedural and substantive status prior to the date of the execution hereof and shall proceed as if this Settlement Agreement and related orders had not been executed. The Parties will jointly move for the Court to vacate any order contemplated herein that shall have been entered, and the Action shall proceed as though the Class had never been certified.   Notwithstanding the foregoing, the following provisions shall survive the termination of this Settlement Agreement: (a) Class notice and administrative costs shall be paid from the Direct Purchaser Settlement Fund Account, as described in paragraph IV.A., and shall be subtracted from the sum returned to Bristol; (b) Cohen, Milstein, Hausfeld & Toll, P.L.L.C. shall remain Lead Counsel, as described in paragraph I.M.; (c) and the Settlement Agreement shall not be used as evidence of a presumption, concession, admission, or indication in any action, proceeding, or arbitration, as described in paragraph XII.A.

## VIII.   QUALIFIED SETTLEMENT FUND

A.     Qualified Settlement Fund. The Parties agree that the Direct Purchaser Settlement Fund Account is intended to be Qualified Settlement Funds within the meaning of Treasury Regulation section 1.468B-1, and that the Settlement Administrator within the meaning of Treasury Regulation section 1.468B-2(k)(3) of that Account shall be responsible for filing tax

11

returns for the Direct Purchaser Settlement Fund Account and paying from the Direct Purchaser

Settlement Fund Account any taxes owed with respect to same.  The Parties agree to cooperate

with each other and their attorneys or accountants by providing information to the extent

reasonably necessary to enable such tax returns to be prepared and filed by the Settlement

Administrator as may be necessary, but the Parties shall in no event be liable for such tax, except

to the extent of their interest in the Direct Purchaser Settlement Fund Account.  In the event it is

determined that the Direct Purchaser Settlement Fund Account is not a Qualified Settlement

Fund within the meaning of Treasury Regulations section 1.468B-1, any tax liabilities associated

with such a determination shall be satisfied solely from the Direct Purchaser Settlement Fund

Account and Settling Class Members shall have no recourse against Bristol based upon any tax

liabilities paid out of the Direct Purchaser Settlement Fund Account.

## IX.  APPROVALS AND NOTICE TO THE CLASS

A.  <u>Preliminary Approval Order</u>.  As soon as practicable after execution of this

Settlement Agreement, the Plaintiff shall apply to the Court for preliminary approval of this

settlement.  Bristol shall not oppose Plaintiff's application.  The Plaintiff shall seek the entry of

the Preliminary Approval Order substantially in the form attached hereto as Exhibit A:

1.  Finding that the Court has jurisdiction over this action and all aspects of

this settlement;

2.  Preliminarily approving this Settlement Agreement, including a

preliminary finding that its terms are fair, reasonable, adequate and in the best interests of the

Class as a whole, and that its terms satisfy Federal Rule of Civil Procedure 23(e) and due process

requirements;

3.  Certifying the Class for purposes of settlement only, pursuant to Fed. R.

Civ. P. 23(c);

4.  Directing that within twenty (20) days after entry of the order preliminarily

approving the settlement, Lead Counsel shall: (a) cause the Notice to be mailed to all Class

members whose addresses can be reasonably ascertained and to each potential Class member that

requests such Notice; and (b) cause the Summary Notice to be published in the manner directed by the Court; provided, however, that if notice is given in conjunction with a proposed settlement with ABI, the other defendant in this Action, the Parties may submit a revised Notice and Summary Notice to the Court for approval;

5.      Determining, pursuant to Fed. R. Civ. P. 23(c)(2), that the giving of notice as provided herein will constitute the best notice practicable under the circumstances and due and sufficient notice of the hearing and rights of the members of the Class with respect thereto, to all persons entitled to such notice;

6.      Scheduling a Fairness Hearing before the Court to determine the reasonableness, adequacy and fairness of this settlement, whether the Final Order and Judgment should be entered, and to consider the application by Class Counsel for attorneys' fees, costs, and disbursements (the "Fee Petition"); and to consider whether to approve the proposed plan of allocation;

7.      Directing Lead Counsel to file an affidavit with the Court certifying that the Notice has been mailed to all members of the Class whose address can be reasonably ascertained and to all Class members who requested it, and that the Summary Notice has been published, as provided in the Preliminary Approval Order or any subsequent order;

8.      Providing that any Settling Class Member who objects to the approval of this Settlement Agreement may appear at the Fairness Hearing and show cause why the Settlement Agreement should not be approved as fair, reasonable and adequate and why the Final Order and Judgment should not be entered, and further providing that any objections must be in writing, and must be both filed with the Court and copies delivered to Lead Class Counsel and Bristol's counsel in the manner set forth in the Preliminary Approval Order;

9.      Providing that any member of the Class who does not wish to participate in or obtain the benefits of or be bound by the terms of the proposed settlement must send a written request for exclusion to the Settlement Administrator postmarked no later than forty-five (45) days after the date the Notice is mailed to the Class; and

13

10.     Providing that, if this Settlement Agreement is terminated or ultimately not approved, the Court will modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of a summary judgment motion or motions, and preparation of trial.

B.     Final Approval.  The Plaintiff shall apply to the Court, and Bristol shall not oppose the application, for the entry of the Final Order and Judgment, substantially in the form attached hereto as Exhibit B:

1.     Approving the settlement and this Settlement Agreement and adjudging its terms to be fair, reasonable, adequate and in the best interests of the Class as a whole, adjudging its terms to satisfy Federal Rules of Civil Procedure 23(e) and due process requirements, directing consummation of its terms and provisions and retaining jurisdiction to effectuate the same;

2.     Dismissing the Action on the merits, with prejudice and without costs, with such dismissal subject only to compliance by the Parties with the terms and conditions of this Settlement Agreement and any order of the Court with reference thereto;

3.     Discharging and releasing the Releasees, and each of them, from the Released Claims;

4.     Permanently barring and enjoining the institution, maintenance, prosecution or enforcement by the Plaintiff or any Settling Class Member, either directly or indirectly, representatively, derivatively or in any other capacity, of any other actions or claims that are discharged and released pursuant to this Settlement Agreement;

5.     In the discretion of the Court, awarding attorneys' fees and expenses, and an incentive award to Plaintiff, to be paid exclusively out of the Direct Purchaser Settlement Fund Account;

14

6.      Ordering the distribution of the money remaining in the Direct Purchaser Settlement Fund Accounts in the manner provided for herein and in the eventual allocation and distribution plan or as otherwise ordered by the Court;

7.      Containing such other and further terms that are not materially inconsistent with the provisions of this Settlement Agreement as the Court may deem advisable;

8.      Finding that the Court has jurisdiction over the Action and retaining exclusive jurisdiction over the Action until the Settlement Agreement has been consummated and each and every act agreed to be performed by the Parties hereto shall have been performed, and thereafter for all other purposes necessary to effectuate the terms of the Settlement Agreement;

9.      Finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay and directing entry of the Final Order and Judgment as a final judgment that is immediately appealable; and

10.      Directing that for a period of five years, the Clerk of the Court shall preserve a record of those potential members of the Class that have timely excluded themselves from the settlement  and shall provide a certified copy of such records to Bristol at its own expense.

## X.      RELEASE AND DISCHARGE OF CLAIMS

A.      The Release.

1.      If the Settlement is approved by the Court, each Releasee shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including without limitation costs, expenses, fines, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, which the Settling Class Members, whether directly, representatively, derivatively, or in any other capacity, whether or not they object to the settlement and whether or not they make a claim on or participate in the Direct Purchaser Settlement Fund Account, ever had, now have or hereafter can, shall or may have,

15

relating in any way to any conduct, act or failure to act, prior to the date of this Settlement

Agreement, concerning the purchase, sale, or pricing of Taxol® or generic paclitaxel, or relating

to any conduct, act or failure to act, alleged in the Complaint, including, without limitation, any

such claims that have been asserted or could have been asserted based on the facts alleged in the

Complaint against the Releasees.  The claims covered by the foregoing release are referred to

herein collectively as the "Released Claims."

       2.     In addition, each Settling Class Member will expressly waive and

release, upon the Settlement Agreement becoming final, any and all provisions, rights, benefits

conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent.  A general release does not extend to
> claims which the creditor does not know or suspect to exist in his favor at the time
> of executing the release, which if known by him must have materially affected his
> settlement with the debtor;

and by any law of any state or territory of the United States, or principle of common law, which

is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Settling Class

Member may hereafter discover facts other than or different from those which he, she or it knows

or believes to be true with respect to the claims which are the subject matter of this paragraph,

but each Settling Class Member hereby expressly waives and fully, finally and forever settles and

releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or

unsuspected, contingent or non-contingent claim with respect to the subject matter of the

provisions of this paragraph whether or not concealed or hidden, without regard to the

subsequent discovery or existence of such different or additional facts.

       3.     Each Settling Class Member also hereby expressly waives and

fully, finally and forever settles and releases any and all claims it may have against Defendants

under § 17200, *et seq*, of the California Business and Professions Code, which are expressly

incorporated into this paragraph X.A. and the term "Released Claims".

       4.     Each Settling Class Member shall look solely to the Direct Purchaser

Settlement Fund Account for settlement and satisfaction, as provided herein, of all Released

Claims. Except as provided by order of the Court pursuant to this Settlement Agreement, no Settling Class Member shall have any interest in the Direct Purchaser Settlement Fund Account or any portion thereof.

     5.    Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved exclusively in the United States District Court for the District of Columbia.

    B.    <u>Covenant Not To Sue</u>. Each Settling Class Member hereby covenants and agrees that it shall not, hereafter, seek to establish liability against the Releasees based, in whole or in part, on any of the Released Claims. In the event that such Settling Class Members commence or continue any such action, the Releasees shall be entitled to seek an order from the Court enjoining the continuation of such action, and the Settling Class Members agree that they will not oppose the entry of such an order. In the event a party breaches the covenant not to sue as set forth in this paragraph, the breaching party shall be liable for all damages incurred by the other party, including without limitation compensatory damages as well as attorneys' fees and costs.

    C.    <u>Effect of Releases</u>. This Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense. The Settling Class Members and Bristol agree that any such proceeding would cause irreparable injury to the Releasees and that the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding. The Settling Class Members and the Releasees further agree that this Settlement Agreement may be pleaded by the Releasees as necessary for the purpose of enforcing this Settlement Agreement.

## XI.    IMPLEMENTATION AND SCHEDULING

    A.    <u>Notice to the Class</u>. On or before the date set by the Court in the Preliminary Approval Order or a subsequent order, Class Counsel shall cause a Summary Notice to be published, in the manner directed and approved by the Court, and shall cause the Notice to be

mailed promptly to all Class members whose addresses can be reasonably ascertained and to all potential Class member who request a copy.

B.     Fairness Hearing.  The Fairness Hearing shall commence on a date to be determined by the Court in the Preliminary Approval Order or such later order as the Court may issue, and in such place as the Court shall determine therein.  In connection with the Fairness Hearing, the Parties shall file such papers with the Court as their counsel or the Court determines to be necessary.  At or before the Fairness Hearing, Lead Counsel shall file with the Court proof of mailing of the Notice and proof of publication of the Summary Notice.

C.     Cooperation Among The Parties.  The Parties and their counsel agree to cooperate in the prompt submission of this Settlement Agreement to the Court, to take all steps that may be required by the Court, and otherwise to use their best efforts to consummate this Settlement and to obtain the entry of the Final Order and Judgment.  They shall not encourage, either directly or indirectly, any individual or entity to object to the fairness or reasonableness of the settlement, or to resist or delay in any manner the Court's approval of this Settlement Agreement and the settlement it reflects, or to encourage any potential Settling Class Members to "opt out" of the proceedings.

D.     Entry of Final Order.  If, following the Fairness Hearing, the Court approves the Settlement, and the Settlement has not been terminated as set forth in Section VII above, counsel for the Parties shall jointly submit for entry by the Court at or promptly following the Fairness Hearing an agreed proposed Final Order and Judgment in substantially the form attached hereto as Exhibit B.

E.     Costs and Attorneys' Fees.  Except as otherwise provided herein, all Parties to this Settlement Agreement shall bear their own costs, expenses, and attorneys' fees in connection with this Action and the entry or enforcement of this Settlement Agreement.

F.     Binding Effect.  The Settlement Agreement shall be binding on all members of the Class, except those who exercise their right to be excluded from the Class.

**XII.**     **MISCELLANEOUS PROVISIONS**

A.     No Admission of Liability.

1.     This Settlement Agreement and any Court order or proceeding related hereto is not a concession or admission, and shall not be used against any of the Releasees as an admission or evidence with respect to any claim of any wrongdoing, fault, or omission by any of them. Whether or not the settlement is finally approved, neither the Settlement Agreement, nor any document, statement, or proceeding related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession, indication or admission by any of the Releasees of the truth of any fact alleged, or the validity of any claim which has been, could have been, or in the future might be asserted in any litigation, or of the deficiency of any defense which has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, or wrongdoing whatsoever, or that the Plaintiffs, the Class, the Settling Class Members, the Non-Settling Class Member or any of them has in fact suffered any damage.

2.     Neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or in any arbitration, except (a) in connection with the Parties' application for approval of this Settlement Agreement and all proceedings incident thereto, including request for attorneys' fees, costs and disbursements and compensation to Plaintiffs; (b) in defense of any claim brought against it by Settling Class Members that in any way relates to the Released Claims; and (c) to enforce this Settlement Agreement.

B.     Return of Documents. Plaintiff, Settling Class Members, and Class Counsel shall not voluntarily provide work product, expert or consultant analyses, IMS data, or any other documents collected during their investigations of, or the pendency of this Action, to any Non-Settling Class Member or to any other Person, and shall prohibit, to the extent permissible, the

19

experts and consultants previously retained by them in connection with the Action from accepting an engagement in any action based on the same subject matter as the Action.

C.       Notice To Counsel.  Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party shall be in writing and shall, unless expressly provided otherwise herein, be given personally, by express courier, or by postage prepaid mail, or by facsimile transmission followed by postage prepaid mail, and shall be addressed as follows:

> To Plaintiff or the Class:

> > COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
> > Linda P. Nussbaum
> > 825 Third Avenue, 30th Floor
> > New York, New York 10022
> > Fax: (212) 838-7745

> To Bristol:

> > CRAVATH, SWAINE & MOORE
> > Evan R. Chesler
> > Worldwide Plaza
> > 825 Eight Avenue
> > New York, New York 10019
> > Fax: (212) 474-3700

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be mailed, by giving the other Parties' prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

D.       Sole and Entire Agreement; Modifications.

1.       This Settlement Agreement and the attachments hereto constitute the sole and entire agreement among the Parties hereto with respect to the subject matter hereof, and no representations, warranties, inducements, promises, or agreements, oral or otherwise not embodied or incorporated herein have been made concerning or in connection with this Settlement Agreement or its exhibits.  Any and all prior discussions, negotiations, agreements, commitments, and understandings relating thereto are hereby superseded and merged herein.

2.      The provisions of this Settlement Agreement (including time periods specified herein) may be modified by written agreement of all of the Parties with the consent of the Court without further notice to the Class unless the Court requires that notice be sent. The terms or provisions of this Settlement Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by all Parties. Any failure by any Party to insist upon the strict performance by other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that Party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Settlement Agreement to be performed by the other Party.

3.      The undersigned counsel of record for each of the Parties hereby represents that he or she is authorized to enter into this Settlement Agreement on behalf of their respective client(s).

4.      The Settlement Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

E.      Independent Settlement. This settlement of the Action is entirely independent of all other cases and is not conditioned on approval by any other party or settlement of any other case.

F.      Benefit. Nothing in this Settlement Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Settlement Agreement on any Persons other than (1) the Parties hereto, (2) the Releasees, and (3) the Settling Class Members, and each of their respective heirs, successors and assigns.

G.      Captions. The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

H.    Governing Law, Jurisdiction And Venue.  This Settlement Agreement, including, but not limited to, the releases contained herein, shall be governed by, and construed in accordance with the laws of the State of New York, without regard to its choice of law or conflict of laws principles.  This Settlement Agreement shall be first enforced exclusively in the United States District Court for the District of Columbia, and in that respect the Parties, on behalf of themselves and the Class, waive any objection that each of them may now have or hereafter have to the venue of any such suit, action or proceeding and irrevocably consent to the jurisdiction of the Court in any such suit, action or proceeding and agree to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding.  It is expressly acknowledged that the Court retains exclusive jurisdiction over the Class for the purposes of enforcing the terms of this Settlement Agreement.

I.    Arm's-Length Negotiations.  This Settlement Agreement, including the exhibits attached hereto, was executed after arm's-length negotiations among the Parties and reflects the conclusion of the Class Counsel and Bristol's Counsel that this Settlement Agreement and the settlement are fair, equitable and in the best interests of each of their respective clients.

J.    Reasonable Efforts.  Counsel for all of the Parties shall use all reasonable and practicable efforts to obtain the entry of the Final Order and Judgment.  The Parties, and their respective counsel, agree to use all reasonable and practicable efforts and to take all steps reasonably necessary to effectuate the settlement set forth in this Settlement Agreement.

K.    Counterparts.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

L.    Stay and Resumption of Discovery.  The Parties agree, subject to the approval of the Court, that discovery shall be stayed except to the extent discovery is necessary with respect to opt outs and for purposes of administering and consummating this Settlement Agreement.  In

22

the event that this Settlement Agreement is not approved by the Court or the settlement does not become final pursuant to paragraph I.H., discovery will resume in a reasonable manner to be approved by the Court.

     M.    <u>Settlement Agreement Controls</u>.  To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement, dated March 14, 2003, are read together, the terms of this Settlement Agreement shall control.

     **IN WITNESS WHEREOF**, this Stipulation of Settlement has been executed this 14th day of March, 2003, by the undersigned counsel of record for the Parties.

CRAVATH, SWAINE & MOORE

Evan R. Chesler
Richard J. Stark
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Counsel for Bristol-Myers Squibb Company*

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

Linda P. Nussbaum
825 Third Avenue, 30th Floor
New York, NY  10022
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934
Telephone:  (202) 408-4600

23

Facsimile: (202) 408-4699

***Lead Counsel for Plaintiff and the Class***

24