**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ONCOLOGY & RADIATION
ASSOCIATES, P.A.,

                            **Plaintiff,**

v.                                                      **Civil Action No. 1:01CV02313 (EGS)**

BRISTOL-MYERS SQUIBB CO., and
AMERICAN BIOSCIENCE, INC.

                            **Defendants.**

## CLASS PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANTS

Class Plaintiff respectfully moves this Court for an order pursuant to Federal Rule of Civil Procedure 23(e) granting final approval to the proposed Class Action Settlement entered into on March 14, 2003, between Class Plaintiff and Bristol-Myers Squibb Company ("Bristol"), and the Class Action Settlement entered into on May 8, 2003, between Class Plaintiff and American BioScience, Inc. ("ABI"). This Court preliminarily approved the proposed settlements on May 13, 2003 and conditionally certified the settlement class. On this motion, for the reasons set forth in the accompanying memorandum of law and supporting documents, Class Plaintiff seeks an order that the proposed settlements are in all respects fair, reasonable, adequate and in the best interests of the settlement class and are accordingly fully and finally approved by this Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

Dated:  July 22, 2003     Respectfully submitted,

_____/s/_____
Michael D. Hausfeld (D.C. Bar No. 153742)
Daniel A. Small (D.C. Bar No. 465094)
Brian A. Ratner (D.C. Bar No. 473284)
**COHEN, MILSTEIN, HAUSFELD**
  **& TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Linda P. Nussbaum
Jacqueline E. Bryks
**COHEN, MILSTEIN, HAUSFELD**
  **& TOLL, P.L.L.C.**
825 Third Avenue, 30th Floor
New York, NY  10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

Jay B. Shapiro
Matthew W. Buttrick
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**
Museum Tower – Suite 2200
150 West Flagler Street
Miami, FL  33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

Alan D. Lash
Martin B. Goldberg
**LASH & GOLDBERG LLP**
100 S.E. 2nd Street, Suite 1200
Miami, FL  33131
Telephone: (305) 347-4040
Facsimile:  (305) 347-4050
***Attorneys for Plaintiff***
***Oncology & Radiation Associates, P.A.***

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ONCOLOGY & RADIATION
ASSOCIATES, P.A.,**

                    **Plaintiff,**

**v.**

**BRISTOL-MYERS SQUIBB CO., and
AMERICAN BIOSCIENCE, INC.**

                    **Defendants.**

**Civil Action No. 1:01CV02313 (EGS)**

## DIRECT PURCHASER CLASS PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT
## BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANTS

**July 22, 2003**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     RELEVANT BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Class Plaintiff's Investigation Underlies this Settlement . . . . . . . . . . . . . . . . . . . 2

        B.      The Proposed Settlement Benefits the Settlement Class. . . . . . . . . . . . . . . . . . . 3

        C.      The Settlement was Negotiated at Arm's-Length by Knowledgeable Counsel . . . 3

        D.      Notice of Settlement, Settlement Hearing
                and Opportunity to Opt Out Has Been Provided . . . . . . . . . . . . . . . . . . . . . . . . . 4

        E.      No Objections Have Been Filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    STANDARD FOR JUDICIAL APPROVAL OF
        THE PROPOSED CLASS ACTION SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     EVALUATION OF THIS SETTLEMENT DEMONSTRATES THAT IT IS FAIR,
        REASONABLE AND ADEQUATE AND THAT IT SHOULD BE APPROVED . . . . . 8

        A.      The Proposed Settlement Resulted From Arm's-Length
                Negotiations by Informed, Experienced Counsel . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      The Proposed Settlement Terms are Fair, Reasonable and
                Adequate in Relation to the Strength of Plaintiff's Case. . . . . . . . . . . . . . . . . . . 9

        C.      This Lawsuit is at an Appropriate Point for Settlement . . . . . . . . . . . . . . . . . . . 12

        D.      Reaction of the Direct Purchaser Class to the Settlement . . . . . . . . . . . . . . . . . . 13

        E.      The Opinions of Experienced Counsel Support Final Approval. . . . . . . . . . . . . 14

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**Case**                                                                                                **Page(s)**

*In re Ampicillin Antitrust Litigation,*
    82 F.R.D. 652 (D.D.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Board of Education v. American BioScience, Inc.,*
    No. 02-1109, 2003 U.S. App. LEXIS 12629 (Fed. Cir. June 23, 2003) . . . . . . . . . . . . 12

*Cobalt Corp. v. Bristol-Myers Squibb Co. and American BioScience, Inc.,*
    No. BC258906 (Cal. Super. Ct. June 24, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*City of Detroit v. Grinnell Corp.,*
    356 F. Supp. 1380 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Domestic Air Transport Antitrust Litigation,*
    148 F.R.D. 297 (N.D. Ga. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hennessy v. Bacon,*
    137 U.S. 78 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hughes Tool Co. v. Trans World Airlines,*
    409 U.S. 363 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Lease Oil Antitrust Litigation,*
    186 F.R.D. 403 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    205 F.R.D. 369 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 13, 14

*Luevano v. Campbell,*
    93 F.R.D. 68 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mayfield v. Barr,*
    985 F.2d 1090 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McGuinness v. Parnes,*
    C.A. No. 87-2728-LFO, 1989 WL 29814 (D.D.C. Mar. 22, 1989) . . . . . . . . . . . . . . 7, 8

*In re National Student Marketing Litig.,*
    68 F.R.D. 151 (D.D.C. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13, 14

*Osher v. SCA Realty I, Inc.,*
    945 F. Supp. 298 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

*Pigford v. Glickman,*
    185 F.R.D. 82 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Pray v. Lockheed Aircraft Corp.,*
    644 F. Supp. 1289 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Stewart v. Rubin,*
    948 F. Supp. 1077 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997) . 7, 8, 10, 13, 14

*In re Telectronics Pacing Systems,*
    137 F. Supp. 2d 985 (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Telex Corp. v. International Business Machs. Corp.,*
    510 F.2d 894 (10th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Thomas v. Albright,*
    139 F.3d 227 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

*United States v. District of Columbia,*
    933 F. Supp. 42 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re Vitamins Antitrust Litig.,*
    No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25066
    (D.D.C. July 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*In re Vitamins Antitrust Litig.,*
    No. 99-197, MDL No. 1285, 2000 U.S. Dist. LEXIS 8931
    (D.D.C. Mar. 30, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

-iii-

*In re Vitamins Antitrust Litig.*
        2001 U.S. Dist. LEXIS 24026, at *25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

## FEDERAL STATUTES

Federal Rule of Civil Procedure 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 6

## MISCELLANEOUS

Manual For Complex Litigation (Third)
        § 30.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        § 30.42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE
        AND PROCEDURE:  CIVIL 2D § 1797.1 at 378-79 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . 5

4 Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.51 (4th ed. 2002) . . . . . . . . . . . . . . . . 8

I.      **INTRODUCTION**

Plaintiff, Oncology & Radiation Associates, P.A., respectfully submits this memorandum

in support of its motion for final approval of the settlement of this Direct Purchaser class action

against defendants Bristol-Myers Squibb Company ("Bristol") and American BioScience, Inc.

("ABI") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 23(e).  Plaintiff

has appended as Exhibit A to its motion a Final Order and Judgment.  The Stipulation of

Settlement entered into on March 14, 2003 between Class Plaintiff and Bristol, and the

Stipulation of Settlement entered into on May 13, 2003 between Class Plaintiff and ABI

(collectively the "Settlement Agreements"), are appended as Exhibits B and C to the motion for

final approval.

Pursuant to the terms of the Settlement Agreements, Bristol made a cash payment of

$65,000,000, and ABI has agreed to make a cash payment of $815,000, for the benefit of the

members of the Direct Purchaser Settlement Class.[1]  Under the terms of the agreements, Class

Members that submit timely, valid and allowed claim forms will receive cash distributions from

the Settlement Fund.  The amount of each Class Member's distribution will be based on its direct

purchases of Taxol from Bristol or its subsidiaries from January 1, 1999 through March 14, 2003.

This settlement of the claims of its direct purchaser class, reached after three years of

investigation, litigation and negotiation, provides a substantial benefit to the Settlement Class

Members.  As a result, the Settlement Class will have the immediate benefit of the settlement

---

[1]The payment by Bristol and ABI and any interest earned thereon, are referred to in this
brief as the "Settlement Fund."

while avoiding the enormous expense and inevitable uncertainty of continued litigation against the Defendants.  Moreover, the settlement provides a lump-sum cash payment, with no deferred monies or coupons.

## II.      RELEVANT BACKGROUND

### A.      Class Plaintiff's Investigation Underlies this Settlement.

This Settlement is the culmination of three years of investigation and litigation by Class Counsel.  The investigation began with Class Counsel's preliminary investigation into the market for paclitaxel-based products, namely Taxol® ("Taxol") and generic bioequivalent versions of Taxol.  The chronology of the investigation and litigation is set forth more fully in the Declaration of Michael D. Hausfeld Filed on Behalf of Direct Purchaser Class Counsel in Support of Final Settlement Approval and Class Counsel's Joint Petition for an Award of Attorneys' Fees, Reimbursement of Expenses and an Incentive Award to the Named Plaintiff, at ¶¶ 3-9 (attached to as Exhibit 1 to the Memorandum in Support of Direct Purchaser Class Counsel's Plan of Distribution of Settlement Proceeds, Joint Petition for an Award of Attorneys' Fees, Reimbursement of Expenses and an Incentive Award to the Named Plaintiff filed simultaneously herewith and, incorporated by reference hereto).

This is the only direct purchaser action that was filed with respect to Taxol and, without this action, class members would have no recovery for the overcharges that they paid.  The private actions brought on behalf of the direct and end-payor classes preceded, by an extended period of time, actions ultimately filed by governmental entities.  Class Counsel developed and

litigated this case <u>without</u> the benefit of any prior government investigation, guilty plea or settlement.

**B.**      **The Proposed Settlement Benefits the Settlement Class.**

The proposed settlement provides immediate and substantial benefits to the Direct Purchaser Settlement Class.  As explained in detail below, pursuant to the Settlement Agreements, a fund of $65,815,000 has been created for distribution to the Settlement Class and for payment of attorneys' fees and costs.  The members of the Settlement Class are those persons or entities that purchased Taxol directly from Bristol or its subsidiaries from January 1, 1999 through March 14, 2003.  In exchange for the consideration provided by the Settlement Agreements, members of the Settlement Class will release all claims against the Defendants related to the conduct alleged in the class action.

As set forth in more detail in the Declaration of Raymond S. Hartman, the Settlement Fund will fairly and adequately compensate Class Members for the overcharges they sustained as a result of Defendants' allegedly unlawful conduct.  *See* Decl. of Raymond S. Hartman in Support of Settlement ¶¶ 9-15 (attached hereto as Exhibit D).  Indeed, the $65,815,000 cash fund far exceeds the damages sustained by the Class during the period in which, in Class Counsel's view, the Class had the highest probability of succeeding.

**C.**      **The Settlement was Negotiated at Arm's-Length by Knowledgeable Counsel.**

Class Plaintiff's counsel and Defendants' counsel, who are experienced and knowledgeable antitrust and class action attorneys, negotiated the two Settlement Agreements which provide a total settlement of all claims brought on behalf of the class, after extensive,

arm's-length negotiations which took place over a period of many months.  These discussions

were undertaken in good faith, and after substantial factual investigation and legal analysis of the

claims and defenses of the parties.  Some of the settlement discussions took place under the

guidance and assistance of Magistrate Judge Kay.  During the discussions, counsel exchanged

expert reports and analyses, fully analyzed Bristol's transactional data and data with respect to

the sale of generic Taxol, and consulted with patent, FDA, and economic experts.  Class Counsel

believe that the Settlement now before the Court is fair, reasonable and adequate to the Direct

Purchaser Settlement Class.  A lack of significant opt outs and no objections to the settlement,

proposed plan of distribution or requested attorneys' fees indicate Class Members echo Class

Counsels' view.

       **D.**    **Notice of Settlement, Settlement Hearing**
              **<u>and Opportunity to Opt Out Has Been Provided</u>.**

As directed by this Court, Notice Packets, including the Notice of Proposed Settlement of

Class Action and Hearing Regarding Settlement were mailed on June 2, 2003, by first class mail,

postage prepaid, to all potential members of the Direct Purchaser Settlement Class whose

addresses could be obtained with reasonable diligence.  *See* Affidavit of Dawn E. Addazio ¶ 5,

dated July 18, 2003, attached hereto as Exhibit E.  A total of 3,543 notices have been mailed.  *Id.*

¶ 8.  Summary Notices of the proposed Settlement were published in the June 16, 2003 edition of

<u>Modern Healthcare</u> and the June 23, 2003 edition of <u>The Pink Sheet</u> (published by F.D.C.

Reports)  *Id.*  ¶ 6.  The Settlement Notice alerted Class Members to the time and place of this

Court's Fairness Hearing and provided that any Settlement Class Member wishing to exclude

itself from the Settlement must provide written notice of such exclusion by July 17, 2003.  *Id.* ¶

10.  The Settlement Notice further informed Class Members of their right to object to the proposed Settlement (as well as their right to object to the proposed Plan of Distribution, the petition for attorneys' fees and costs, and other matters) and of the deadline and procedures for doing so.

E.     **No Objections Have Been Filed.**

Pursuant to the notices and the Court's order preliminarily approving the proposed Settlement, Settlement Class Members wishing to object to the Settlement were to file a notice of their intention to appear at the Fairness Hearing with the Court on or before July 16, 2003.  No objections to the Settlement have been received.  Furthermore, despite the fact that over 3,500 notices were mailed to the direct purchaser class members, only eight entities requested exclusion.  *Id.* ¶ 10.

III.   **STANDARD FOR JUDICIAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT.**

Federal Rule of Civil Procedure 23(e) provides that:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Approval of a proposed class action settlement is within the discretion of the court. *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996).  "In determining whether a settlement should be approved, the court must decide whether it is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (2003); *see also* 7B Charles A. Wright, Arthur R. Miller

& Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1797.1 at 378-79 (2d ed. 1986). The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring settlement. *See, e.g., Hennessy v. Bacon*, 137 U.S. 78, 85 (1890). This policy of encouraging settlements is particularly appropriate in class actions, which are often complex, drawn out and demanding on limited judicial resources. *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

The discretion accorded to courts in approving settlements recognizes that "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice," and the trial court's ruling on the adequacy of a proposed compromise is given great deference. *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972); *Thomas v. Albright*, 139 F.3d 227, 231, 233 (D.C. Cir. 1998). "The Court must eschew any rubber stamp approval . . . yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. District of Columbia*, 933 F. Supp. at 47 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d at 462). The exercise of that discretion, however, is constrained by the "principle of preference" favoring and encouraging settlements. *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999).

There is no single, obligatory test in this Circuit that courts must use to determine whether the proposed settlement of a class action should be approved under Rule 23(e). *See In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25066, at *21-22 (D.D.C. July 18, 2001) ("*Vitamins*"); *In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285,

2000 U.S. Dist. LEXIS 8931, at *18 (D.D.C. Mar. 30, 2000); *Pigford*, 185 F.R.D. at 98.  Courts

consider the facts and circumstances of a case, identify the most relevant factors, and exercise

their discretion in deciding whether the proposed settlement is "fair, adequate and reasonable."

*Pigford*, 185 F.R.D. at 98; *Thomas*, 139 F.3d at 231.

Several factors consistently have been examined by courts in this Circuit in determining

whether to approve settlements in class actions:

- Whether the settlement is the result of arm's-length bargaining.  *Vitamins,* at *23;  *Thomas*, 139 F.3d at 230-31; *Pigford*, 185 F.R.D. at 99-101;

- The terms of the settlement in relation to the strength of plaintiff's case. *Vitamins*, at *24-25; *Thomas*, 139 F.3d at 231; *Pigford*, 185 F.R.D. at 98;

- The status of the litigation at the time of settlement.  *Vitamins*, at *26-27; *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974); *Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 304 (D.D.C. 1996); *see also Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1290 (D.D.C. 1986);

- The reaction of the class.  *Vitamins*, at *27; *Thomas*, 139 F.3d at 231-33; *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. at 155; *Osher*, 945 F. Supp. at 304; *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); and

- The opinion of experienced counsel.  *Vitamins*, at *28; *Stewart*, 948 F. Supp. at 1087; *McGuinness v. Parnes*, C.A. No. 87-2728-LFO, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989).

As this Court has noted, the test is most appropriately described as "whether the settlement is

adequate and reasonable and not whether a better settlement is conceivable."  *In re Vitamins*

*Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931, at *19 (citation omitted).

**IV.     EVALUATION OF THIS SETTLEMENT DEMONSTRATES THAT IT IS FAIR, REASONABLE AND ADEQUATE AND THAT IT SHOULD BE APPROVED**.

    **A.     The Proposed Settlement Resulted From Arm's-Length Negotiations by Informed, Experienced Counsel.**

This Court and other courts have deferred to the judgment of experienced counsel who have conducted arm's-length negotiations in approving proposed class settlements.  *See, e.g., In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931, at *22; *Stewart*, 948 F. Supp. at 1099; *McGuinness*, 1989 WL 29814, at *1; *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 424-25 (S.D. Tex. 1999); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); 4 Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.51 (4th ed. 2002) ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").  As the court observed in *In re Telectronics Pacing Systems,* 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001), "[t]he Court should always give significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class."

The settlement proposed in the present case – which was negotiated over a period of many months on behalf of the Direct Purchaser Settlement Class by experienced antitrust counsel – is the product of extensive arm's-length negotiations undertaken in good faith, after substantial factual investigation and legal analysis.  Nothing in the course of the negotiations or the substance of the settlement "disclose[s] grounds to doubt its fairness."  MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41.  For example, there is no suggestion that the Named Plaintiff, Oncology & Radiation Associates, P.A., has received any preferential treatment compared to any

other Settlement Class Members.  To the contrary, the arm's-length nature of the negotiations

and the participation of experienced advocates throughout the process strongly supports the

conclusion that the proposed Settlement is fair, reasonable and adequate to the Settlement Class.

> **B.      The Proposed Settlement Terms are Fair, Reasonable and
>           Adequate in Relation to the Strength of Plaintiff's Case.**

In deciding whether to approve a proposed settlement of a class action, "[t]he court's

primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs'

case." *Thomas*, 139 F.3d at 231.  In antitrust actions, although plaintiffs "could potentially

recover treble damages, the standard for evaluating settlement involves a comparison of the

settlement amount with the estimated single damages." *In re Lorazepam & Clorazepate*

*Antitrust Litig.*, 205 F.R.D. 369, 376 n.12 (D.D.C. 2002); *see also In re Ampicillin Antitrust*

*Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 458

(2d Cir. 1974) ("[T]here are strong reasons why trebling is improper when computing a base

recovery figure which will be used to measure the adequacy of a settlement offer.").

Ordinarily, courts approve antitrust settlements that recover only a small fraction of single

damages.  This is particularly true in cases, such as this, where private plaintiffs do not have the

benefit of a prior government guilty plea or settlement.  "The fact that a proposed settlement may

only amount to a fraction" of single damages does not imply that the settlement is unsatisfactory.

*Grinnell*, 495 F.2d at 455.  In fact, "there is no reason, at least in theory, why a satisfactory

settlement could not amount to a hundredth or even a thousandth part of a single percent of the

potential recovery." *Id.* at 455 n.2.  "[I]t must be emphasized that although a settlement agreement does not provide complete satisfaction to all those it affects, this, in and of itself, is not enough to render it 'unreasonable.'" *Stewart*, 948 F. Supp. at 1087 (citation omitted).

Under the terms of the Settlement Agreements in this case, Defendants have agreed to pay $65,815,000 to settle the claims of the Direct Purchaser Class.  This settlement amount provides a meaningful guarantee of recovery to Class Members.  As set forth in the supporting Declaration of Raymond S. Hartman, the Settlement Fund far exceeds the overcharges sustained by the Class during the period August 28, 2000 through October 22, 2000 – the period which, in Class Counsel's estimation, the Class had the highest probability of succeeding at trial.  *See* Exhibit D ¶ 11.  Notably, in a related case, a class of California consumers of Taxol were unable to demonstrate liability as to this "strong" period, with the California Superior Court dismissing the claim against ABI that Bristol and ABI unlawfully conspired to exclude generic competition from the market during this period.  *See Cobalt Corp. v. Bristol-Myers Squibb Co. and American BioScience, Inc.*, No. BC258906 (Cal. Super. Ct. June 24, 2003).  Under these circumstances, a $65,815,000 cash settlement is obviously an excellent result.

By contrast, had the case proceeded to trial, Defendants certainly would have contested liability and damages.  Defendants vigorously dispute that they engaged in any wrongful conduct or violations of the law.  Further litigation would not only require Class Plaintiff to incur substantial costs, including the preparation of witnesses, experts and thousands of pages of

documents for trial, but more important, it would "also entail[] substantial risks." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 377.  In the present case, "monetary recovery certainly cannot be assumed." *Id.*

Even if Class Plaintiff had succeeded at trial, "any verdict inevitably would have led to an appeal and might well have resulted in appeals by both sides and a possible remand for retrial, thereby further delaying final resolution of this case." *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931, at *24; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 393.

On appeal, many antitrust verdicts are reversed.  *See, e.g., Hughes Tool Co. v. Trans World Airlines*, 409 U.S. 363 (1973) (overturning a $145 million antitrust judgment, after years of litigation and appeals); *Backman v. Polaroid Corp.*, 910 F.2d 10, 17, 18 (1st Cir. 1990) (reversing substantial verdict for the class and dismissing the case after eleven years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 276-308 (2d Cir. 1979) (reversing multimillion dollar antitrust judgment after a lengthy trial); *Telex Corp. v. Int'l Bus. Machs. Corp.*, 510 F.2d 894, 933 (10th Cir. 1975) (*per curiam*) (reversing a $259.5 million antitrust judgment for plaintiff and awarding defendant an $18.5 million judgment on its counterclaim).

Finally, if Class Plaintiff won at trial and on appeal, litigating this case to its conclusion could take years.  "By contrast, the settlement negotiated by the parties provides for relatively prompt recovery." *Pigford*, 185 F.R.D. at 104-05.  In addition, continuing litigation involving the Defendants, including two recent decisions achieved by Defendant ABI, could have

substantially negatively impacted Plaintiff's claims here.  *See Board of Educ. v. American BioScience, Inc.,* No. 02-1109, 2003 U.S. App. LEXIS 12629 (Fed. Cir. June 23, 2003) (determining that ABI had certain Taxol-related ownership rights); *Cobalt Corp. v. Bristol-Myers Squibb Co. and American BioScience, Inc.,* No. BC258906 (Cal. Super. Ct. June 24, 2003) (granting ABI's motion for summary judgment finding no conspiracy and no illegal conduct with respect to Bristol's listing of the '331 patent in the Orange Book).

In sum, "[g]iven the complexities of proof in antitrust cases, . . . and, the ordinary risks, and delays inherent in complex antitrust litigation, the Settlement appears to provide significant benefit to the class," and should therefore be given final approval.  *In re Vitamins Antitrust Litig.,* Misc. No. 99-197, MDL 1285, 2001 U.S. Dist. LEXIS 24026, at *23-24 (D.D.C. Nov. 30, 2001).

### C.      <u>This Lawsuit is at an Appropriate Point for Settlement.</u>

In evaluating a proposed settlement, courts consider "the stage of proceedings when settlement has been offered and degree of completed discovery."  *In re Nat'l Student Marketing Litig.*, 68 F.R.D. at 155; *see also Osher*, 945 F. Supp. at 304; *Pray v. Lockheed Aircraft Corp.,* 644 F. Supp. 1289, 1290 (D.D.C. 1986).  "Courts thus consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery."  *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. at 377.

This Settlement is the result of several years of investigation and litigation by counsel for the Direct Purchaser Class.  The litigation is presently in the discovery stage, and discovery

would continue were the case to proceed to trial.  "By entering a settlement agreement prior to

summary judgment motions, . . . the parties avoid[] significant expense and guarantee[] a cash

recovery."  *Id.* at 378.

"Therefore, this settlement does not come too early to be suspicious nor too late to be a

waste of resources.  It is in fact at a desirable point in the litigation for the parties to reach an

agreement and to resolve these issues without further delay, expense, and litigation."  *In re*

*Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 24026, at \*25.

Indeed, in light of the *Cobalt* ruling, there can be no legitimate dispute that this settlement

occurred at the right moment.

### D.   Reaction of the Direct Purchaser Class to the Settlement.

One other factor typically considered in determining the reasonableness of a settlement is

the reaction of the class.  *Vitamins*, at \*27; *Thomas*, 139 F.3d at 231-33; *In re Nat'l Student*

*Mktg. Litig.*, 68 F.R.D. at 155; *Osher*, 945 F. Supp. at 304; *Stewart*, 948 F. Supp. at 1057.  "The

existence of relatively few objections certainly counsels in favor of approval."  *In re Lorazepam*

*& Clorazepate Antitrust Litig.*, 205 F.R.D. at 378.

Here, over 3,500 notices of this Court's preliminary approval of the Settlement were sent

to Settlement Class Members, advising them of the terms of the Settlement, their right to object

or opt out and the procedure for filing objections.  There have been no objections to the Direct

Purchaser Settlement despite the fact that the Direct Purchaser Class consists of sophisticated

commercial entities, many of whom have in-house or outside counsel.

13

**E.**      **The Opinions of Experienced Counsel Support Final Approval.**

The "[o]pinion of experienced and informed counsel should be afforded substantial consideration" by a court in evaluating the reasonableness of the proposed settlement.  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 380; *see also In re Nat'l Student Marketing Litig.*, 68 F.R.D. at 155.  Class counsel's "professional judgment is not controlling, but is entitled to considerable weight in the Court's determination of the overall adequacy of the settlement."  *Luevano v. Campbell*, 93 F.R.D. 68, 88 (D.D.C. 1981); *see also Stewart*, 948 F. Supp. at 1087.

Class Counsel believe that the Settlement now before the Court is fair, reasonable, and adequate to the Direct Purchaser Class.  Class Counsel are extremely experienced in class action and antitrust matters.  Indeed, Chief Judge Hogan recently heralded the experience Class Counsel have in cases such as this during the Fairness Hearing in the *In re Lorazepam & Clorazepate Antitrust Litigation*:  "[C]ounsel for the parties here are some of the most experienced and best antitrust counsel in this country, and obviously the Court considers that."  *See* Transcript of Fairness Hearing, June 16, 2003, at 10, 12 (attached hereto as Exhibit F).[2]  Consequently, the opinion of Class Counsel "that this Settlement is fair, adequate, and reasonable is deserving of this Court's consideration."  *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 24026, at *25; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 380 (crediting counsel's opinion that the settlements are fair, adequate and reasonable).

---

[2]  Michael D. Hausfeld and Linda P. Nussbaum of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. serve as Class Counsel for the Direct Purchaser Class in *In re Lorazepam & Clorazepate Antitrust Litigation* and this litigation.

V.      **CONCLUSION**

For the foregoing reasons, Class Plaintiff respectfully requests that the Court grant its

motion for final approval of the Settlement Agreements and direct the Clerk to enter the Final

Order and Judgment appended to its motion as Exhibit A.

Dated:  July 22, 2003                    Respectfully submitted,


                                         _____/s/_____
                                         Michael D. Hausfeld (D.C. Bar No. 153742)
                                         Brian A. Ratner (D.C. Bar No. 473284)
                                         **COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
                                         1100 New York Avenue, N.W.
                                         West Tower, Suite 500
                                         Washington, D.C.  20005-3934
                                         Telephone: (202) 408-4600
                                         Facsimile: (202) 408-4699

                                         Linda P. Nussbaum
                                         Jacqueline E. Bryks
                                         **COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
                                         825 Third Avenue, 30th Floor
                                         New York, NY  10022
                                         Telephone: (212) 838-7797
                                         Facsimile: (212) 838-7745

                                         Jay B. Shapiro
                                         Matthew W. Buttrick
                                         **STEARNS WEAVER MILLER WEISSLER
                                             ALHADEFF & SITTERSON, P.A.**
                                         Museum Tower – Suite 2200
                                         150 West Flagler Street
                                         Miami, FL  33130
                                         Telephone: (305) 789-3200
                                         Facsimile: (305) 789-3395

15

Alan D. Lash
Martin B. Goldberg
**LASH & GOLDBERG LLP**
100 S.E. 2nd Street, Suite 1200
Miami, FL  33131
Telephone: (305) 347-4040
Facsimile:  (305) 347-4050

***Attorneys for Plaintiff***
***Oncology & Radiation Associates, P.A.***

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies this 22nd day of July 2003, that copies of the foregoing Class Plaintiff's Motion for Final Approval of Settlement Between Direct Purchaser Class Plaintiffs and Defendants and accompanying Memorandum and exhibits were served to counsel of record pursuant to the Court's Electronic Case Filing System on July 22, 2003.



                                  Justine J. Kaiser